No. 22,788.

T. F. MOORE et al., *Appellants,* V. PATRICK GOULD, *Appellee.*

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT—*Purchaser Produced—Commissions.* The rule followed that a real-estate dealer is entitled to his commission on the sale of property when he has produced a purchaser who is ready, willing and able to buy on the terms agreed to by the owner.

2. SAME. A real-estate dealer is entitled to his commission when he produces a purchaser who is ready, willing and able to buy property on the terms agreed to by the owner, although in the absence of the owner the agent failed to set down accurately in writing the precise terms upon which the owner agreed to dispose of the property.

3. SAME—*Purchaser Produced—Landowner Refused to Sell—Agent Entitled to Commission.* It is immaterial that the owner's agent closed a sale on terms not precisely as prescribed by the owner, when the owner flatly refused to sell the property to the purchaser found by the agent solely because he had made a premature sale to another purchaser, and not because of the variance in the terms of sale set down in writing by the agent.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed December 11, 1920. Reversed.

*Earl Blake, William A. Ayers, C. A. McCorkle, Walter A. Blake,* and *Wilbur H. Jones,* all of Wichita, for the appellants.

*J. A. Brubacher, W. D. Jochems,* and *Wirth Sargent,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for a real-estate dealer's commission.

The defendant, Patrick Gould, listed his Sedgwick county farm for sale with H. E. Osburn, a real-estate dealer associated with the other plaintiffs. Osburn induced a prospective purchaser, Frank Hadley of Arkansas City, to come and see the farm. Hadley wrote Osburn on June 2, 1919, that if his wife was suited with the farm, he would give $15,500 for it, $500 down and balance in cash on delivery of deed and abstract. Osburn received Hadley's letter on June 3, and at once in-

formed the defendant of this proposition, and the latter instructed him to accept it, and to get Hadley to come as quickly as possible. Osburn wired and telephoned Hadley, who replied that he would come the second day thereafter. Osburn promptly told Gould of that arrangement and Gould said: "All right." Hadley and wife came and Osburn took them to see the farm. Osburn told them there was a mortgage on the farm, and the wife did not like that feature of the matter, preferring to pay the full price in cash rather than assume a mortgage, but the Hadleys said they would buy. Osburn and the purchasers returned to Wichita, the home of Gould; but could not locate him that day. Gould was then engaged in selling the farm to another party. The plaintiff Osburn testified:

"Mr. Gould called me up in the morning. He says, 'Is this Harry Osburn' or 'Harry?' I said, 'Yes.' I says, 'This is Gould.' Of course I knew his voice. He says, 'Yes. I got in the worst mix-up yesterday I ever got in my life.' I says, 'Pat, I sold your farm yesterday.' 'Yes, and I sold it, too. I have taken money down from my people.' I says, 'Can't you meet us in my office about nine o'clock?' He said, 'Yes.' And he came and when he came into the office, I took the check out of my pocket and tendered him. I says, 'Here is the $500.00 that Mr. Hadley pays, makes as first payment on the farm.' He says, 'I won't take it. I have taken money from those other fellows'—whoever they were—I didn't know them. I said, 'Didn't you tell me that you would give all the time I needed to take those people from the train and show the farm?' He says, 'Yes, sir. I did.'"

Hence this lawsuit, for Osburn's commission.

The trial court sustained a demurrer to the evidence, on the ground that there was a variance between the terms upon which Gould had agreed to sell the farm and the terms of sale as reduced to writing by Osburn and the Hadleys. There was a mortgage on the farm, and Osburn had been given no instructions how to deal concerning it; and when Gould could not be found on June 5 to personally close the contract with the Hadleys, Osburn undertook, as best he could, to get something in writing which would hold the Hadleys, and so he covered the matter of the mortgage as he supposed would best serve Gould's interests. Of course he had no authority to bind Gould as to that detail, but for that matter it was unnecessary for Osburn to set anything down in writing. Moreover, it was clearly shown that the Hadleys preferred to make it

The State, *ex rel.*, v. Board of Education.

altogether a cash transaction, in the literal terms already agreed to by Gould. The Hadleys were shown to be ready; willing and able to buy, either in cash or by assumption of the mortgage, and that was enough to entitle Osburn to his commission. (*English v. Harris,* 106 Kan. 167, 186 Pac. 987.) Gould should have been on hand to dispose of the mortgage feature of the contract himself. It was error for the trial court, on a demurrer to the evidence, to rule as a matter of law that "the final offer" of the Hadleys was to purchase by assumption of the mortgage.

But it seems to us that this is a still simpler case. In his refusal to sell, Gould did not consider the matter of the mortgage as set down in writing by Osburn. He refused to sell solely because he had otherwise and prematurely disposed of the property. That refusal is a matter which concerns him and the Hadleys, not him and his agent. Osburn's right to his commission matured when he produced the Hadleys, who were ready, willing and able to buy. What Osburn set down in writing as the terms of the sale was not important, since the Hadleys would buy, and preferred to buy, on the precise terms to which Gould had already agreed. The demurrer to the evidence should have been overruled.

The judgment is reversed and the cause remanded for a new trial.