No. 34,391

GROVER J. O'NEILL and CHARLES P. O'NEILL, *Appellees*, v. JOHN C. FOSTER and U. S. HODGE, *Appellants*.

(95 P. 2d 253)

Opinion filed November 10, 1939.

*Roy C. Davis, Warren H. White, Frank S. Hodge, William H. Vernon, Jr.,* and *Eugene A. White,* all of Hutchinson, for the appellants.

*Walter F. Jones, Claude E. Chalfant, Charles S. Fulton, J. Richards Hunter,* all of Hutchinson, and *Donald A. Hansen,* of Caney, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for a commission for the sale of real estate. Judgment was for plaintiffs. Defendants appeal.

The petition alleged that the parties entered into a contract whereby the defendants agreed in writing to pay a commission of

$500 to plaintiffs if they would sell a half section of land owned by defendants for $30,000 cash, and that subsequent to the execution of this contract defendants agreed to pay in addition to the above commission all the land sold for in addition to the $30,000. The petition further alleged that plaintiffs interviewed a prospective buyer, who stated that he was ready, willing and able to pay defendants $30,300 in cash for the place, but stated that if it was agreeable to defendants he would prefer to pay $10,000 cash, secure the rest with a first mortgage to run over a term of years; that plaintiffs inquired of defendant Hodge whether defendants would agree to such terms, and Hodge orally agreed that such terms would be satisfactory; that thereupon the buyer executed and delivered to plaintiffs a written contract whereby he agreed to pay defendants $30,300 for the property, $11,300 cash and the balance of $19,000 payable over a period of seven years; that on January 19, 1938, the buyer was ready, willing and able to purchase the property for $30,300 cash and to complete the transaction by January 21, 1938, and to accept the real estate subject to a one-year lease. The petition further alleged that plaintiffs tendered the contract to defendants, and also advised defendants that if the contract was not satisfactory to them the buyer was ready, willing and able to purchase the property for $30,300. The petition then alleged that defendants refused to execute the contract because of some minor objections to it, which they said could be corrected; that defendants told plaintiffs that they would on the next day prepare in writing and execute a contract making such corrections as were satisfactory to them; that defendants did not forward any such contract, but on January 24, 1938, advised plaintiffs by letter that they refused to execute the contract or to sell the land.

Judgment was asked in the amount of $800, this being the amount defendants agreed to pay in the written contract plus the $300 which the buyer was willing to give for the property in addition to the $30,000.

The answer was a general denial except the admission that the written contract as to the commission was entered into. The answer also alleged that the contract was not entered into as a general listing, but was entered into solely to enable plaintiffs to complete the deal with the purchaser to whom they represented they had already shown the land. The answer denied that defendant Hodge orally agreed on January 19, 1938, to an extension of time, or that the terms would be satisfactory, and alleged that he stated he could not

make any extension or change in the terms of the contract without consulting with Foster. The answer further denied that plaintiffs stated on January 22, 1938, that the buyer was ready, willing and able to purchase the property for cash.

The reply was a general denial. At the trial after the opening statement of counsel for plaintiffs he asked and was given permission to amend the petition by alleging that at all times Hodge was acting for and on behalf of Foster.

Evidence was introduced in behalf of both parties, and after instructions by the trial court the jury returned a verdict for plaintiffs in the amount of $500. After a motion for a new trial was overruled judgment in that amount was given to plaintiffs. Defendants appeal from that judgment. The only evidence brought here by this record is that of plaintiffs. The error argued here is that the trial court erred in overruling the demurrer of defendants to the evidence of plaintiffs.

This will make it necessary to examine the testimony of the witnesses for plaintiffs. This testimony must be taken as true and every reasonable inference tending to prove the cause of action of the plaintiffs must be drawn.

Mr. Charles O'Neill testified that he and his son called on defendants to obtain a listing of the half section in question; that they saw Foster, and he said:

"Well, if you want to discuss land, you will have to talk to Mr. Hodge, because I handle the motorcar business, and he handles the real estate. He has lots of land in Rice county, or considerable land."

He also testified that Mr. Hodge came in and said they were pricing the land at $30,000 and that they would pay a commission of $500 out of the purchase price; that after some talk Hodge agreed to pay them all they could get above $30,000; that a contract was handed to them. This contract was as follows:

"THE HODGE-FOSTER MOTOR CO., INC.
116 West Second Street
HUTCHINSON, KANSAS
Phone 81

January 7, 1938.

"U. S. Hodge and J. C. Foster hereby agree to sell one-half (½) section of Rice county land, SE¼ 18-6-20 and NE¼ 19-6-20, for the sum of $30,000 (thirty thousand dollars), paying five hundred dollars ($500) total commission, provided the transaction is completed by January 21, 1938.

"This sale is subject to one-year lease on above land.

"(Signed)   U. S. HODGE,
"(Signed)   JOHN C. FOSTER."

This witness further testified that when the contract was handed to them his son objected because the contract only called for a $500 commission and Hodge said in the presence of Foster that they could have all above $30,000; that following this they called on a prospective buyer named Stueder, and as a result of his conversation with Stueder he called Hodge and asked if he would be interested in accepting a payment on the land as low as $10,000 and the balance on terms, and he said:

"Go ahead and make the trade if you can, on those terms. I asked him what rate of interest, and he said, 'Five percent.' I did not state how many years time because I knew it was immaterial much to this man's time, and after talking, after that conversation, I said, 'Well, we will go to work hard on it in the morning.'"

The witness further testified that the next day he saw William Stueder and Julius Stueder and showed them the land; that he told Stueder that Hodge would sell this land for a down payment as low as $10,000; that Mr. Stueder said to make it $11,000; that he wanted possession of the land about March 1 and that he wanted the man to quit pasturing the wheat; that Stueder said he would pay $19,000 at five percent or

"If it needs to be I can pay it all. . . . I can pay every bit of it if it needs to be, or if it is necessary."

He testified that he mentioned he would like to have five years on it, but that witness said, "Let's make it seven years," and witness said, "Let's put down payments of $100 at each interest-paying time"; that a contract for the sale of the land along these general lines was drawn up and signed by Stueder; that when the contract was shown to Mr. Foster he objected to the time payments, but said nothing when told that Hodge had agreed to this; that the two, Hodge and Foster, withdrew into a room with the contract and in about forty minutes came out and said they wanted payments on five years instead of seven; said nothing about the pasturing of the wheat and they would have to see their tenant about getting possession March 1. Witness testified he told them this was all right and to go ahead and fix up a contract; that he told them plainly that Stueder would buy the land and pay for it on any terms they wanted; that they were to fix up a contract to suit themselves; that on January 22 he and his son stopped and asked Hodge if they should go talk to the tenant, and Hodge said he would attend to it.

The testimony of Grover O'Neill, the son, was substantially to

the same effect, with the addition that he stated that Hodge and Foster stated they wanted the payments to be $500 instead of $100.

J. L. Hamilton, a banker, testified that Julius Stueder, a brother of the buyer, had an account of around thirty or thirty-five thousand dollars in his bank and that he would say that this would have been available to William.

Stueder testified that the land was priced to him at $30,000 cash; that he told them he would give $10,000 and the rest as a mortgage at five percent; that he went to look at the land the next day and he thought it was a good buy at $30,000; that his brother had $30,000 in the bank and witness owned nine quarters of land; that he signed the contract in question and told O'Neill if there were some changes to be made there, "I was willing to do whatever was fair." Stueder also testified that—

". . . On the 20th, after I had talked to my brother about this deal, I found out I could pay the whole thing in cash if that would be required.

"Q. Did you tell that to Mr. O'Neill? A. Yes, sir.

"I said if it could be arranged to stop pasturing I would rather have it that way; if not, it would be all right to go ahead and pasture. It really didn't make a whole lot of difference to me whether it was cash or not."

This witness testified that when he noted in the letter from Hodge and Foster that the deal would have to be dropped because the offer was not for cash he told the O'Neills he could make it cash if it need be; that he did not want the land at the time he was testifying because he had bought 100 acres of other land, paying $6,500 for it.

From this record defendants argue that plaintiffs, as agents, are not entitled to any commission for the reason that they acted in bad faith. The basis of this argument is that defendants knew that Stueder could pay cash and was willing to do so, but that knowing this they drew up the contract for part in cash and a mortgage for the balance when it was their duty to sell the land to the best advantage of their principal, Hodge and Foster.

The trouble about this point is that plaintiffs did not offer the land in question to Stueder for anything other than cash until Stueder had inquired about terms and plaintiffs had called defendants and secured their approval to an offer of the land on terms. Furthermore, an offer of cash was submitted to defendants at the time they saw the contract and suggested the changes in it. The evidence falls short of convicting plaintiffs of any bad faith or representing anyone other than defendants in this transaction.

The defendants next argue that there was insufficient evidence to show that defendant Hodge had authority to act as agent for Foster or that he did so act. On this point the evidence is that defendants were engaged in the automobile business under the name of Hodge-Foster Motor Company. It was at this place of business that plaintiff first called on defendants. Here the following conversation took place:

"Well, if you want to discuss land, you will have to talk to Hodge, because I handle the motorcar business and he handles the real estate.

· "He (Foster) did not understand real estate very well, and that any real-estate deal that they would make was up to Mr. Hodge.

. . . . . . . . . . . . . . .

"He (Foster) told us that whatever Mr. Hodge would do in the matter would be all right with him, but he didn't want to discuss the question until Mr. Hodge had come to the office."

Then when the contract was tendered defendants at the home of Hodge, Foster was there and took part in the conversation. The testimony to these conversations was as follows:

"He (Foster) said that because Mr. Hodge, I believe Mr. Hodge owned most of this other land, if not all of it, himself, and that he was handling these land propositions himself, and whatever Mr. Hodge did that Foster just went along with him, whatever he did in the matter of land transactions.

"Mr. Foster never had anything more to say when I (Chas. P. O'Neill) told him that Mr. Hodge had agreed to the contract.

"Mr. Foster and his wife arose to go . . . and Mr. Foster stated for us to go ahead with this, with this changing of these objections, that is, make out a new contract, and whatever Mr. Hodge did was acceptable to him."

Under these circumstances it was not necessary that plaintiffs prove Hodge was the agent of Foster or Foster the agent of Hodge. They were acting together at all times and each was aware of what was going on at all times. In this connection the trial court was entitled to take into consideration the fact that the listing agreement was signed Hodge-Foster, as was the letter in which they advised plaintiffs that they did not want to sell the land.

The listing contract was no more than an authority to plaintiffs to find a purchaser ready and willing and able to purchase on the terms of the listing. (See *Wiggam v. Shouse,* 105 Kan. 637, 185 Pac. 896.)

There is ample evidence from which the trial court was justified in submitting to the jury the question of whether the written listing contract had been modified by a subsequent oral contract to provide for the selling of the land on terms.

Defendants argue further that there was not sufficient evidence to warrant the submission to the jury of the question of whether plaintiffs produced a purchaser ready, willing and able to purchase. We have examined this record and have reached the conclusion that there was sufficient evidence to warrant a submission to the jury of the question of whether Stueder was ready, willing and able to purchase the land for cash and on the terms submitted in the written listing contract and was willing and able to meet the objection advanced by defendants. (See *English v. Harris,* 106 Kan. 167, 186 Pac. 987; also, *Wacker v. Hestor,* 102 Kan. 710, 171 Pac. 1151.)

The judgment of the trial court is affirmed.