No. 34,427

HARRY T. MORGAN, *Appellee,* v. H. V. WHEELER and THE MIDLAND BUILDING COMPANY, *Appellants.*

(95 P. 2d 320)

668

Opinion filed November 10, 1939.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellants.

*A. V. Roberts, Paul W. Schmidt* and *Verne Roberts,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted by a broker to recover a fixed commission alleged to be due and owing to him under the express terms of a written agreement, for having negotiated a lease for the defendants with Sears, Roebuck and Company. Judgment went for plaintiff, and defendants appeal.

Separate actions were filed against the defendants, H. V. Wheeler and The Midland Building Company, a corporation. The commission contract was made with Wheeler. Later Wheeler transferred the property for which a lease was obtained to the defendant, The Midland Building Company. The latter company executed a lease to Sears, Roebuck and Company. It was stipulated below to waive trial by jury and to try the two actions together on the same evidence and that no distinction should be made between the liability of Wheeler and The Midland Building Company.

The commission claimed by appellee in this action was $2,500, that being the first installment of a total commission claimed in the exact sum of $10,000. It is conceded appellee is either entitled to recover $2,500, in the present action, or nothing. His claim to $2,500 in the present action and to an ultimate commission in the sum of $10,000 is predicated upon a written contract. The contract was pleaded and attached to his petition as the basis of his cause of action. The principal question with which we are concerned, at the outset and at the end of this litigation, is the interpretation of the contract relied upon by the plaintiff. All other specifications of error are incidental. We shall therefore turn immediately to the provisions of the commission contract. It reads:

"This agreement entered into on this the *30th day of July, 1937,* by and between:

"H. V. Wheeler, as party of the first part, sometimes herein called the 'Owner,' and Harry T. Morgan, of Wichita, Kan., as the party of the second part, sometimes herein called the 'Broker.'

"WITNESSETH:

(1) "That it is agreed between the parties hereto that the 'Owner' shall, *upon the conditions herein stated and not otherwise,* be liable to and shall pay the 'Broker' the sum of ten thousand dollars ($10,000) in full payment and consideration for his services as a broker in negotiating a lease between the undersigned owner and the Sears, Roebuck and Company, a corporation.

"The services of the 'Broker' herein referred to relate to the following property located in Wichita, Sedgwick county, Kansas, to wit:

"All of lots 'G,' 'H' and 'I,' and the south 1494 feet of lot 'J,' on Market street, in replat of reserve in Greiffenstein's addition to the city of Wichita, Kan.

(2) "The liability of the 'Owner' to the 'Broker' is *contingent upon the following conditions:*

"That the *lease now in negotiation* shall actually be consummated, signed, executed and delivered by the parties, and if *said lease* is not *so executed,* whether it be the fault of either the lessor or the lessee, no commission or liability for commission shall exist on the part of said 'Owner.'

(3) "In event *said lease* is signed, executed and *delivered,* then the said sum of ten thousand dollars ($10,000) shall be paid and payable as follows, without interest:

"(*a*) Two thousand five hundred dollars ($2,500) at the time when *said lease is actually executed and delivered;* (*b*) two thousand five hundred dollars ($2,500) at the time when *said building* is half completed; (*c*) five thousand dollars ($5,000) when *the building* is actually completed, *and accepted as completed* and ready for occupancy by the Sears, Roebuck and Company.

"In the event *said building* is completed *and not actually accepted for occupancy,* then there shall be no liability for the said five thousand dollars ($5,000).

(4) "The 'Broker' accepts the *conditions of this agreement* in lieu of and in full compensation for his services in connection with *said lease,* and the 'Owner' agrees to pay said sum at the times and *upon the conditions and contingencies* herein stated.

(5) "This contract shall extend to and be binding upon the heirs, executors, administrators, successors, trustees and assigns of the parties hereto.

"In witness whereof, the parties hereto have caused this agreement to be executed and delivered on this the day and year first herein written.

(Signed)   H. V. WHEELER,<br>
First Party and 'Owner,'<br>
(Signed)   HARRY T. MORGAN,<br>
Second Party and 'Broker.'"

(Italics inserted.)

(The paragraphs of the contract were not originally numbered, and have been numbered for our convenience.)

Appellant contends the contract when read in its entirety, and especially the italicized portions thereof, clearly indicates this was a contingency contract, and that the conditions upon which a commission in the sum of $10,000 would become due and owing are clearly specified in the contract. It is his position that since this action is predicated upon an express and not upon an implied contract liability attached only upon the happening or fulfillment of the conditions specified, and not otherwise. He contends the clearly stated and plain condition of liability was that expressed in paragraph two, namely, that *"the lease now in negotiation* shall actually be consummated, signed, executed and delivered by the parties,"* and that the contract was obviously not intended to make him liable in the sum of $10,000, for the consummation of an entirely different kind of lease than that which was in process of negotiation at the time the commission contract was signed.

Appellee, just as strenuously, urges the contract simply required him to negotiate "a" lease with a definite lessee, namely, Sears, Roebuck and Company, and on the premises described; that the words in paragraph two, to wit: *"the lease* now in negotiation," simply meant "a" lease between the parties designated, which was then in negotiation. The trial court adopted appellee's interpretation. That interpretation is disclosed by the court's finding number 13, which reads:

"The court finds the phrase in the contract 'the lease now in negotiation' did not refer to any definite or specific lease, plans or specifications, but had reference to negotiations to procure a lease which the owner and lessee would sign."

We cannot bring ourselves to concur in the interpretation adopted by the trial court. If that interpretation be correct then appellant would have been liable to appellee in the sum of a $10,000 commission for negotiating a lease between Wheeler and Sears, Roebuck and Company on the particular premises described for any kind of building, for any lease term irrespective of how short the term might be, and irrespective of the rental income. The appellant, on the theory of the court's interpretation, would have been liable for a commission in the sum of $10,000 on a six months' lease or a one-year lease with a total rental of far less than the amount of the commission. It is no answer to say that the owner nor Sears, Roebuck and Company would ever have entered into a lease of that character. What the parties to the lease might or might not have

done constitutes no safe legal guide for the interpretation of the express commission contract executed between Wheeler and appellee. *"The lease now in negotiation,"* July 30, 1937, the very day the commission contract was executed, contemplated a three-story building with basement, covering ground 90 by 147 feet, a thirty-year lease with an annual rental of $31,500. This contemplated lease, then in negotiation, would have yielded a total rental of $945,000. That lease was not consummated at that time or at any other time. That lease was completely abandoned. About one year later and in the month of July, 1938, the parties entered into an entirely different lease for a two-story building and basement. It covered only 55 feet by 147 feet, as against a building of 90 feet by 147 feet, in contemplation when the commission contract was executed. It provided for a ten-year term, and not for a thirty-year term, as did *"the lease in negotiation"* on July 30, 1937. It provided for a fixed rental of only $10,800 per year, plus a rental bonus of two and one-half percent on all net annual sales in excess of $432,000, should the lessee make sales in such volume, instead of an annual rental of $31,500. It therefore provided for a certain total rental for the term of the lease of only $108,000, or about one-eighth, or twelve percent, of the total rental of *"the lease* in negotiation" when the commission contract was signed. We cannot ignore the terms upon which the parties themselves contracted and thereby make a new contract for them. In this contract appellee agreed, "The owner shall, *upon the conditions herein stated and not otherwise,* be liable to and shall pay the broker the sum of $10,000." Those *conditions* did not consist only in negotiating "a" lease with Sears, Roebuck and Company on the premises. The parties by their agreement stipulated that liability was contingent upon further *conditions.* In paragraph two they expressly made liability for $10,000 contingent upon the actual consummation, execution and delivery of *"the lease* now in negotiation," and not upon the consummation of *"a lease* now in negotiation." Had they meant to cause liability to attach upon the consummation of any lease the parties might *thereafter* execute on the premises, they could easily have said so in plain language. They did not do so. On the contrary, they plainly made liability in the sum of $10,000 contingent upon the consummation of *"the lease* now in negotiation." If the interpretation of the trial court be correct, there would have been no need or purpose whatever of employing the words "the lease" or the words "now in negotiation." They would

constitute mere surplusage. Appellee, however, expressly agreed in paragraph two to make liability in the sum of $10,000 contingent upon the actual consummation of "the lease now in negotiation." The same identical import is conveyed by paragraph number one. In paragraph number two appellee further agreed no liability should exist "if *said lease* is not so executed, whether it be by the fault of either the lessor or the lessee." In paragraph three appellee again made the execution of "said lease" a condition of liability. In paragraph 3 (*a*) he made actual execution and delivery of *"said lease"* a condition for payment of the first $2,500 of the commission. In paragraph 3 (*b*) he made the completion of one-half of *"said building"* a condition for payment of the second $2,500 of the commission. In paragraph 3 (*c*) he made the actual completion of *"the building"* and its acceptance by Sears, Roebuck and Company, as completed, a condition for payment of the remaining $5,000 of the commission. And in paragraph four appellee again expressly recognized that liability for payment of the $10,000 commission was made dependent upon compliance with "the conditions and contingencies" stated in the contract.

The interpretation of a written contract, free from ambiguity, is a judicial function. (*Platts v. Thompson,* 126 Kan. 544, 268 Pac. 833; *Sipes v. Pessemier,* 144 Kan. 300, 58 P. 2d 1085; *Fleming v. Campbell,* 146 Kan. 294, 69 P. 2d 718.) Was the instant lease actually uncertain or ambiguous? In *Roxana Petroleum Corp. v. Jarvis,* 127 Kan. 365, 273 Pac. 661, the test of uncertainty is stated thus:

"Ambiguity in a conveyance does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it *genuinely uncertain* which one of two or more meanings is the proper meaning." (p. 372.) (Italics inserted.)

The application of proper rules of construction, heretofore indicated, clearly discloses the instant lease was not genuinely uncertain or ambiguous. No oral testimony relative to what the parties understood the contract provided or meant was therefore necessary or proper. All the law requires of the plaintiff in an action on an express and unambiguous contract, such as the instant one, is the establishment of the contract and the actual performance of the contractual conditions upon which liability is expressly made contingent. (*Karr v. Moffett,* 105 Kan. 692, 695, 185 Pac. 890; *Karr v. Moffett,* 106 Kan. 379, 187 Pac. 683, on rehearing; *Wenkheimer v.*

*Hagar,* 129 Kan. 518, 520, 283 Pac. 489; 2 Metchem on Agency, 2d ed., Brokers, § 2425.) In the first Karr case, *supra,* it was held:

"The ordinary rule that a real-estate agent is entitled to his commission when he procures a purchaser who is ready, willing, and able to buy, or when he brings a buyer and seller together, who makes a bargain on different terms than those theretofore dictated to the agent, does not apply where the agent's commission is governed by a special contract between him and his principal." (Syl. ¶ 2.)

In the course of the opinion it was said:

"In arriving at this conclusion the court is not unmindful of its long-established, liberal attitude towards the rights of real-estate agents who bring buyer and seller together, whereby a bargain is effected, although not upon the terms originally given to the agent. (*Ratts v. Shepherd,* 37 Kan. 20, 14 Pac. 496; *Plant v. Thompson,* 42 Kan. 664, 22 Pac. 726; *Grimes v. Emery,* 94 Kan. 701, and citations, 146 Pac. 1135.) *The case before us is circumscribed by the terms of the specific contract under which—and only under which—the defendants were to be obligated* (*Fultz v. Wimer,* 34 Kan. 576, 9 Pac. 316); . . . ." (p. 695.) (Italics inserted.) (See, also, opinion on rehearing.)

The trial court made findings of fact and conclusions of law. It is unnecessary to discuss them in detail. The errors in essential findings and conclusions resulted from the erroneous interpretation of the commission contract, which was the basis of the lawsuit. Appellant raised that issue throughout the trial by a motion to strike portions of the petition; a motion to require the petition to be made definite and certain by setting forth the contents of "the lease now in negotiation"; a motion requiring appellee to elect whether he would stand upon the express contract or upon *quantum meruit;* a demurrer to plaintiff's evidence; motion for findings of fact and conclusions of law; motion to strike certain findings and conclusions; motion for judgment, and, finally, by motion for a new trial. These attacks were erroneously overruled, at least as to their essential features which involved the interpretation of the contract, with one exception which pertained to the motion to elect. The order overruling that motion was not erroneous, as appellee then stated he was standing upon the commission contract which he had pleaded. The court, at least at that stage of the trial, adopted that theory, but continued to misinterpret the contract. Upon the theory adopted plaintiff clearly failed to establish the right to recover any commission. Whether plaintiff could have recovered a different commission upon the theory of an implied contract for negotiating the lease

which was ultimately executed, if he had sued upon that theory, we need not determine. That is not the issue before us. Appellee chose to attempt to recover a specified commission for services in negotiating a lease which was eventually consummated and he elected to seek that relief upon the basis of the express contract. It was his province and not ours to determine the theory upon which he would seek a recovery.

No authorities from this jurisdiction, cited by appellee, are inconsistent with the conclusion we have reached. It will serve no useful purpose to remand this action for retrial. Under such circumstances, this court may order final judgment on reversal. (*Security Benefit Ass'n v. Swartz*, 146 Kan. 267, 70 P. 2d 16, and cases therein cited.) The judgment is reversed with directions to enter judgment for appellant.