No. 35,162

Harry T. Morgan, *Appellant*, v. H. V. Wheeler and The Midland Building Company, *Appellees*.

(113 P. 2d 165)

Opinion filed May 10, 1941.

*A. V. Roberts, Paul W. Schmidt* and *Verne Roberts*, all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt*, all of Wichita, for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action as on *quantum meruit* to recover for services rendered by plaintiff in connection with a lease on real estate. Judgment was rendered in favor of the defendants on their motion for judgment on the pleadings, and plaintiff appeals.

Insofar as this action is concerned, the interests of the defendants, H. V. Wheeler and The Midland Building Company, are the same, and hereafter reference will be made to Wheeler only.

Plainitff's petition alleged that early in 1937 Wheeler requested plaintiff to obtain a lease or leases for him from Sears, Roebuck & Co., or others, on certain real estate in Wichita, Kan.; that defendant desired to construct a building or buildings on the site providing he could find a lessee therefor, and asked plaintiff to obtain a lessee; that plaintiff has been in the occupation of obtaining leases and was well acquainted with the officials of Sears, Roebuck & Co., and in order to procure a lease on defendant's property he informed the company of defendant's desires, and proceeded, as set out in detail in the petition, to bring the parties together, resulting in a

lease dated July 13, 1938, for a building 55 by 147 feet, two stories in height, at a monthly rental of $900, plus a bonus if the sales exceeded a certain amount per annum. It was further alleged that shortly thereafter an additional building 35 by 147 feet was erected, of such nature as to make one building 90 by 147 feet, and on July 13, 1939, the lease was modified so as to expire November 1, 1954, rentals being increased to $2,125 per month, with a further payment if sales exceeded a stipulated amount, the total rent being $390,600, exclusive of the additional payments on account of sales. It was further alleged that the lease and the lease as modified and extended were entered into by reason of plaintiff's procuring the company as a lessee, and that plaintiff performed the work at the special instance and request of Wheeler; that after plaintiff brought the parties together, defendant and the lessee executed the first lease on the 55-foot building and the next or modified lease covering the 35-foot building upon terms agreeable to them, leases being signed and delivered at a time and place plaintiff could not designate, as he was not notified, but that the leases were satisfactory to the parties, the buildings had been fully completed and were occupied by the lessee. We need not detail the allegations setting up plaintiff's claim of reasonable value of his services, totaling $7,947.50, for which he sought recovery.

Wheeler's answer set up three alleged defenses and had attached to it a number of exhibits. Each defense as stated made preceding defenses part thereof. Briefly stated, the first defense admitted defendant's ownership of the real estate and the execution of the first lease, but neither admitted nor specifically denied that plaintiff was the procuring cause of its execution. He alleged that as early as 1935 he attempted to interest Sears, Roebuck & Co. in leasing all or a portion of his particular real estate and that he employed a real-estate broker in Kansas City to carry on negotiations for a three-story building for a term of thirty years at a rental of approximately $30,000 per year; that in the latter part of January, 1937, plaintiff represented to defendant that he could successfully consummate the contemplated lease and on that date was employed in writing for that purpose; that thereafter the contract was mutually terminated by the parties, and about July 29, 1937, at a time when no written or oral agreement as to employment or compensation existed between plaintiff and defendant, defendant met representatives of Sears, Roebuck & Co. and discussed proposals for a lease, subject to

approval by officers of the company, for a building three stories high, 90 by 147 feet, for a thirty-year term, at an annual rental of $31,000; that thereafter plaintiff and defendant discussed the commission to be paid plaintiff if the proposed lease should be consummated, and pursuant thereto executed an agreement, dated July 30, 1937, which provided that defendant should be liable to plaintiff for a commission "under the conditions herein stated and not otherwise" in the sum of $10,000 payable as specified. Defendant's liability was—

"Contingent upon the following conditions: That the lease now in negotiation shall actually be consummated, signed, executed and delivered by the parties, and if said lease is not so executed, whether it be the fault of either the lessor or the lessee, no commission or liability for commission shall exist on the part of said 'owner' (defendant) . . . The 'broker' (plaintiff) accepts the conditions of this agreement in lieu of and in full compensation for his services in connection with said lease . . ."

(It may here be said this agreement was previously before this court and is set out in full in *Morgan v. Wheeler,* 150 Kan. 667, 669, 95 P. 2d 320.) It was further alleged that it was the understanding of the parties to the above contract that plaintiff should be paid only in the event the lease then being negotiated should be actually consummated, and if not so consummated, no commission whatever should be due to plaintiff; that the lease then in negotiation was never signed, executed and delivered, the transaction was never consummated, and no lease was ever executed between the company and the defendant which embraced the terms, conditions and provisions of the lease which the parties had in contemplation when the contract of employment was executed.

For his second defense defendant alleged that plaintiff had brought two certain actions in the district court of Sedgwick county, Kansas, against the defendant in the present action to recover commissions allegedly due on the contract for compensation above referred to; that those actions were tried together, at which trial the defendant endeavored to compel plaintiff to elect whether he sued on the written contract or as on *quantum meruit;* that at such trial the trail court had made certain findings of fact and of law from which the plaintiff had not appealed; that plaintiff had litigated his alleged rights in the two actions, and having relied upon performance of a written contract, may not now abandon such claims, but is bound thereby and not now entitled to recover in an action as on implied contract or as on *quantum meruit* or otherwise; that plain-

tiff did not perform the contract sued on, and the lease then in negotiation was never consummated; that after judgment was rendered in the district court defendant appealed to the supreme court, in which court plaintiff contended he had performed his contract; that plaintiff relied upon the written contract; that the appeal was disposed of in the supreme court by decision in *Morgan v. Wheeler,* 150 Kan. 667, 95 P. 2d 320, and in the case it was determined plaintiff's action was founded upon and he had elected to rely upon a written contract; that he had failed to perform and was not entitled to recover. Copies of pleadings, findings, etc., were attached as exhibits.

The third defense was that the matter was *res judicata,* and that plaintiff should not be permitted to shift his position and to rely upon a theory of recovery as on implied contract or as on *quantum meruit,* etc. There being no contention that the reply put in issue any matter hereafter discussed, the reply will not be noticed.

Defendant's motion for judgment on the pleadings was sustained and this appeal followed. The record as abstracted does not reveal that the trial court disclosed any specific reason for its judgment. The briefs cover matters raised under the three defenses, and as discussed will be mentioned as far as need be.

In substance, the first question is whether the plaintiff, having been defeated in his action to recover on his written contract (see *Morgan v. Wheeler,* supra) may now maintain an action to recover as on *quantum meruit*—or is the relief he sought in the present action consistent with that sought in the first, or inconsistent so that he was bound by an election of remedies in bringing the first action. Appellant directs our attention to *Clifton v. Meuser,* 88 Kan. 408, 129 Pac. 159, as being directly in point. Briefly stated, there Mrs. Potts had delivered a sum of money to Mrs. Clifton. Mrs. Potts instituted suit to recover, but died, and the action was revived in the name of and continued by her executor. Mrs. Clifton defended on the ground she had an express contract with Mrs. Potts for services and the moneys were in payment therefor. The trial court instructed the jury that unless they found that the agreement had been made and the service performed, they must find against Mrs. Clifton. That result followed. Thereafter she filed her claim against the estate for the reasonable value of her services. Her claim was allowed in the probate court and denied on appeal to the district court, which held the matter had been adjudicated in the

first action. This court reversed, calling attention to the fact the jury in the first action may have believed plaintiff performed no services, although it was equally tenable the jury were of the opinion that no agreement had been made, and holding—

"Where one who has received money from another contends that it was given him under an express contract, in consideration of services which he afterwards performed, but is defeated in that contention in an action brought against him for the recovery of the money, he is not thereby precluded from maintaining an action upon an implied promise to pay the reasonable value of such services as he had rendered." (Syl.)

Appellant also directs our attention to *Darnell v. Haines*, 119 Kan. 633, 240 Pac. 582. In that case one Earl made an agreement to give Mrs. Darnell certain lands by will on performance of conditions. Earl died and Mrs. Darnell filed a claim in probate court based on implied contract, which was not allowed. She appealed and in the district court dismissed her action without prejudice. Thereafter she commenced an action for specific performance of a parol contract to will the land to her. The defense was she had previously chosen an inconsistent remedy. In holding that she had a cause of action, this court said:

"This court is fully committed to the doctrine that a suit on an implied contract to pay the reasonable value of services rendered, does not deny existence of an express contract to pay a definite sum for the same services; that action on one theory is not incompatible with recovery on the other, notwithstanding the difference in proof and measure of recovery; that both theories may be tendered as grounds for recovery in the same action; and that, although there can be but one recovery, plaintiff may not be required to elect, but may go to the jury on both. (*Berry v. Craig*, 76 Kan. 345, 91 Pac. 913; *Wiley v. Locke*, 81 Kan. 143, 105 Pac. 11; *Clifton v. Meuser*, 88 Kan. 408, 129 Pac. 159; *Brigham v. Carpenter*, 110 Kan. 104, 202 Pac. 976.)" (p. 635.)

Other decisions and authorities to like effect are also cited. It may not be doubted they express a rule generally recognized in this state, but application of it to the situation here remains to be examined.

Appellant contends there was no inconsistency between his action to recover on the written contract, on which he was defeated not because of failure to prove the contract but because he failed to prove he had performed it, and his action subsequently filed to recover as on *quantum meruit*, and, in addition to cases previously mentioned, directs our attention to *Berry v. Craig*, 76 Kan. 345, 91 Pac. 913, a case dealing with real-estate commissions. Mrs. Berry

owned lands and through her general agent Boyce, one Craig undertook to find her a purchaser. Through his agents two men were interested, but the particular deal was not completed. Later one of them purchased directly through Boyce. Craig sued for a commission, his petition alleging two counts, one on express contract, and one as on *quantum meruit,* and defendant's motion to require an election being denied, the cause was submitted to a jury on each claim. The jury found there was an express contract. On appeal to this court, the ruling on election was held to be correct, it being said:

"The two counts were entirely consistent. Neither contradicted the other. The facts stated in the first might be true and the facts stated in the second also might be true. If an express contract existed, recovery could not be had upon an implied contract; but to meet possible exigencies of the proof the plaintiff had the right to go to the jury upon both sets of allegations." (p. 346.)

It is to be observed that in the above case the employment was general and the agent was only to procure a purchaser. The above case is fairly illustrative of the type dealing with liability of owner to agent employed to find a purchaser ready, willing and able to buy. The general rule enunciated in such cases, however, is subject to exceptions.

In *Fultz v. Wimer,* 34 Kan. 576, 9 Pac. 316, it appeared that Wimer in writing authorized Fultz to sell certain lands, he being given two months to perform, the time being later extended for ten days. Fultz took Galli out and showed the land and introduced him to Wimer. No deal was made within the contract period, but later Wimer sold the land to Galli. Ignoring the written contract, Fultz brought suit to recover the value of his services. The defendant answered, setting up the written contract and contending that as Fultz did not perform under it he was not entitled to anything. In the district court a demurrer to plaintiff's evidence was sustained and he appealed. This court held that Fultz was bound by his contract. In the course of the opinion, it was said:

"It is doubtless true that Fultz was instrumental in enabling the defendant to sell his land, but as Fultz and Wimer had entered into written stipulations as to the terms upon which Fultz was entitled to commission, these stipulations must control. . . . After the extension of the contract had expired, Wimer had the right to sell to Galli or to anyone else; and under the written contract he was not liable to pay to Fultz his commission, or any other sum, because, after the expiration of the extension of the contract, the contract had spent its force. (*Coleman v. Meade,* 13 Bush, 358; *Charlton v. Wood,* 11 Heisk. 19.)

If the delay in closing the sale between Galli and Wimer had been caused by any negligence, fault or fraud of Wimer, Fultz would be entitled to his commission, but the evidence shows nothing of this kind. Wimer acted in the best of faith and was very desirous, being over-anxious, for Fultz to produce a cash purchaser upon the terms prescribed in the written contract." (p. 580.)

The question was again before this court in *Karr v. Moffett,* 105 Kan. 692, 185 Pac. 890, where Moffett authorized a sale at a price of $35 per acre net to himself, which he refused to lower. Karr's efforts to sell were not successful, but later Moffett, who was not aware of his agent's effort, sold the lands to Anderson for $35 per acre. Other facts disclosed will not be set forth. Karr brought suit to recover the customary commission and was allowed a recovery in the trial court. Moffett appealed to this court, which reversed the trial court, holding the contract for a commission was specific, and the service to be rendered in order to earn the commission was specific, and that plaintiff had not performed, it being said:

"In arriving at this conclusion the court is not unmindful of its long-established, liberal attitude towards the rights of real-estate agents who bring buyer and seller together, whereby a bargain is effected, although not upon the terms originally given to the agent. (*Ratts v. Shepherd,* 37 Kan. 20, 14 Pac. 496; *Plant v. Thompson,* 42 Kan. 664, 22 Pac. 726; *Grimes v. Emery,* 94 Kan. 701, and citations, 146 Pac. 1135.) The case before us is circumscribed by the terms of the specific contract under which—and only under which—the defendants were to be obligated (*Fultz v. Wimer,* 34 Kan. 576, 9 Pac. 316); and here, also, there is no element of bad faith on the part of the defendants in dealing independently with Anderson, the purchaser." (p. 695.)

and the court holding:

"The ordinary rule that a real-estate agent is entitled to his commission when he procures a purchaser who is ready, willing, and able to buy, or when he brings a buyer and seller together, who make a bargain on different terms than those theretofore dictated to the agent, does not apply where the agent's commission is governed by a special contract between him and his principal." (Syl. ¶ 2.)

A rehearing was denied in the above case by opinion reported in *Karr v. Moffett,* 106 Kan. 379, 187 Pac. 683, wherein it was said:

"The proof of existence of the special contract was surely an effective way of disproving that the defendants owed the plaintiff for services under an ordinary real-estate dealer's contract, such as would entitle the agent to the usual commission when he had brought buyer and seller together whereby they consummated a sale on terms agreeable to each other—'when he had been the procuring cause of the sale,' as the stock phrasing in such cases is expressed." (p. 380.)

And see *Wenkheimer v. Hager,* 129 Kan. 518, 283 Pac. 489, and *Dowling v. Wheeler-Kelly-Hagny Trust Co.,* 152 Kan. 322, 103 P. 2d 866, where the Karr case is followed. That there was a contract in writing specifying the amount of commission and the conditions under which it was to be due is admitted by the pleadings. That contract differed from those considered in the above cases in that it expressly provided the owner was liable to the agent only when a certain lease (which was never executed) had been consummated, and that if it was not, whether through fault of either lessor or lessee, no commission or liability for commission should exist.

Appellant seeks to avoid the force and effect of *Karr v. Moffett,* supra, and like cases and authorities by calling attention to the statement above quoted that there was no element of bad faith on the part of the owner, and by contending that in the case at bar he had pleaded bad faith on appellee's part. Giving to his petition a most liberal construction, the only possible bad faith charged is that the lease actually made was signed at a time when the agent was not present. It was not charged in any way, either by statement of fact or by bold conclusion, that anyone did anything of any character to prevent execution of the proposed lease, which, if it had been consummated by execution, delivery, etc., would have entitled plaintiff to a commission. Bad faith might have entered there, but the fact that a lesser lease was executed than the one being negotiated does not in or of itself show bad faith. The provision of the contract that failure to execute the proposed lease (never executed) "whether it be the fault of either the lessor or the lessee" absolved the owner from liability to the agent, was not to open the door to permit fraud, but it was an indication that in fair dealing that particular lease might never be consummated. A careful examination of plaintiff's third amended petition, on which the cause was submitted, shows no fraud was pleaded.

We are of the opinion the pleadings disclose the existence of a specific contract limiting appellant's right to recover any commission from the appellee; that he previously proved the existence of the contract, but failed to prove performance under it, and that he may not now seek to recover for services as on *quantum meruit.* Our conclusion makes it unnecessary to discuss other matters presented in the briefs.

The judgment of the trial court is affirmed.