No. 43,377

ARTHUR H. HANSON, *Plaintiff-Appellee*, v. FRED M. SCHLETZBAUM and ANGELA R. SCHLETZBAUM, *Defendants-Appellants.*

(387 P. 2d 176)

Opinion filed December 7, 1963.

*James Yates,* of Kansas City, argued the cause and was on the briefs for the appellants.

*Robert L. Boyce, Jr.,* of Kansas City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This appeal by the defendants below in an action for recovery of a real estate commission is (1) from the trial court's orders overruling defendants' motion for new trial and motion for judgment for defendants (2) from the judgment in favor of plaintiff and against defendants in the sum of $690.00 and (3) from the trial court's findings set out in its memorandum opinion.

On July 7, 1960, plaintiff and defendants entered into a written sale contract whereby plaintiff was granted the exclusive right to sell defendants' property for $13,500. The contract was to expire on October 7, 1960. Plaintiff advertised the property, placed "For Sale" signs thereon and attempted to make the sale. Velma Rober-

ton saw the sign prior to October 7, 1960, and began negotiations with defendants but refused to negotiate through any real estate agent. Plaintiff claimed that through his efforts a purchaser ready, willing, and able to buy on terms agreeable to defendants was procured and did buy defendants' property subsequent to October 7, 1960, which entitled plaintiff to a $750.00 commission.

Defendants admitted the execution of the sales contract; that plaintiff had advertised the property for sale, and had placed a "For Sale" sign thereon; that Velma Roberton had seen the sign prior to October 7, 1960, and had purchased the property subsequent to October 7, 1960; and finally, that defendants had refused to pay plaintiff's commission.

Defendants further alleged that Velma Roberton first learned of the property through her Manor Bakery salesman. She was told by defendants of plaintiff's exclusive listing on the real estate and that she should see him but she refused to buy through a realtor. On October 10, 1960, defendants went to Velma Roberton's residence and received an offer which they accepted on October 12, 1960. They executed a contract for the sale of the property at a price approximately $2,000 less than the asking price. Plaintiff did not procure Velma Roberton as a purchaser. She had specifically stated she would not purchase through an agent or while there was an exclusive listing on the property. Defendants had never agreed to accept less than the asking price. Prior to October 7, 1960, defendants had not received an offer for the amount of the asking price, or on any other price agreeable to them. Velma Roberton had never negotiated with plaintiff except that she had seen the "For Sale" sign in the yard. Upon the expiration of the exclusive listing contract, plaintiff furnished defendants with a list of the names of prospective purchasers with whom he had had negotiations concerning the property but the name of Velma Roberton did not appear thereon. This list was never filed with the secretary of the Kansas City Real Estate Board.

The trial court's memorandum opinion reflected the contract provided that defendants would be liable to plaintiff for a commission if the property was sold by anyone during the three months' period the listing was in effect, or if it was sold within six months following the termination of the listing in the event plaintiff had had negotiations and had furnished defendants with the purchaser's name.

The trial court was satisfied the property was sold during the three months' period of the contract although the sale was not

consummated until a subsequent time. Defendants had acted in good faith thinking they had the right to wait until the expiration of three months before consummating the sale in order to avoid paying the commission, but this, in effect, was a subterfuge to avoid such payment. It appeared obvious the purchaser and defendants were ready, willing, and able to negotiate except that they wanted to avoid paying the commission. Defendants were bound by the terms of their contract.

On July 9, 1962, the trial court entered judgment generally in favor of plaintiff for six percent of the selling price of $11,500, or $690.00, and costs. Defendants filed motions for new trial and for judgment for defendants, which motions were overruled on August 22, 1962. Hence this appeal.

Defendants listed their home with plaintiff under an exclusive sale contract dated July 7, 1960, providing in pertinent part as follows:

"I [we] . . . grant to you [Hanson], irrevocably, the exclusive right to sell the same for a period of time commencing with the date hereof and continuing to and including the 7th day of Oct, 1960, for the price and on terms as follows: Price $13,500, Terms $11,000.00 cash and $53.00 monthly including interest at 6%, or upon such other price or terms as I may agree to accept. If sale of said property is made by anyone, including myself, before the expiration of the aforesaid period of time, or if before the expiration of the aforesaid period of time you shall procure a bonafide offer from a purchaser who is ready, able and willing to purchase said property at the price and upon the terms above specifically stated, then I agree to pay you a sum of money equal to 6% of the sale price up to the first $100,000.00 of such sale price plus 3% of the amount of such sale price in excess of $100,000.00, such sum of money in no event to be less than the sum of $50.00. If this property be sold within six months after the expiration of this contract to any person with whom you have had negotiations while this contract is in force, I agree to pay you the commission as above set out, provided you have furnished me with a list of names of the persons with whom you have had negotiations and have filed a copy of such list with the Secretary of the Kansas City, Kansas, Real Estate Board within 10 days from expiration of this contract. In no event am I to be liable for more than one commission if a sale is made by any member of said Real Estate Board. I agree to notify agents with whom I have heretofore listed the property that I have given you the exclusive listing. . . . *Permission is also granted you to place a sale sign on said property. I agree to aid you or anyone representing you in every way possible to foster a sale while this contract is in force.*" (Our emphasis.)

The stipulations of the parties included, among others, that the exclusive sale contract entered into would expire October 7, 1960. If anyone sold the property during the term of the contract,

plaintiff was to receive a commission. That plaintiff had advertised the property for sale, placed signs in the yard, and contacted various people.

The trial court in its memorandum opinion did not pinpoint the evidence supporting its finding that the property was sold during the three months' period nor did it pinpoint the witnesses it believed and disbelieved although it found the sale was not consummated until after the expiration date of the contract.

The record discloses that plaintiff's placing of the "For Sale" sign in the front yard of defendants' property was the first indication to Velma Roberton that their property was for sale and her negotiations were started with defendants while the sign was still in the yard and before October 7, 1960. Even though Velma Roberton was informed of the exclusive listing, she refused to deal through a real estate broker. She discussed the purchase of defendants' property with them. This was brought out not only in the interrogation of Velma Roberton but also in the testimony of defendant, Fred M.. Schletzbaum. Both Charles and Georgia Hopewell testified defendants told them they had a cash buyer. Defendants had not disclosed any name to them but stated she raised dogs. Plaintiff had submitted to defendants a written contract of purchase signed by the Hopewells, but the Hopewells were unable to obtain enough cash to meet the terms required by the contract between plaintiff and the defendants. The Hopewells both testified the conversation between them and the defendants in regard to defendants having negotiated a cash deal took place before the exclusive sale contract with plaintiff had expired so far as they knew because his sign was still in defendants' yard. Defendants had not disclosed the name of Velma Roberton to plaintiff even though they were requested so to do and as soon as the expiration date of the exclusive sale contract was reached, they removed plaintiff's sign from the yard and placed their sign thereon. Immediately thereafter they began active negotiations with Velma Roberton to sell direct to her and entered into a contract with her on October 11, 1960.

On appeal the two questions raised by defendants are whether there is any evidence to support the trial court's findings (1) that the property was sold during the three months' period and (2) that there was a bona fide offer from a ready, able, and willing purchaser to purchase the property upon price and terms agreeable to both the seller and buyer during the three months' period.

In this case we must pay particular attention to the pertinent provisions of the contract already heretofore set out. They did not require that plaintiff consummate a sale. The provisions are clear as to the duties required of the parties. In support of their position defendants rely on *Morgan v. Wheeler*, 153 Kan. 695, 113 P. 2d 165, and cases therein cited. In the Morgan case a written contract had been entered into between the principal and agent pertaining to the obtaining of a lease from Sears, Roebuck & Company on certain real estate in Wichita, Kansas. Failure of performance under that contract precluded the agent, in the first place, from bringing an action based on contract, and failing therein, also precluded him in his subsequent attempt to recover under *quantum meruit*.

Plaintiff here, in turn, relies on *DeYoung v. Reiling*, 165 Kan. 721, 199 P. 2d 492; and *Patee v. Moody*, 166 Kan. 198, 199 P. 2d 798. In the DeYoung case rules of law applicable to the situation presently before us were stated:

"The general rule is that a real estate agent or broker is entitled to a commission if ( *a* ) he produces a buyer who is able, ready and willing to purchase upon the proffered terms or upon terms acceptable to the principal; ( *b* ) he is the efficient and procuring cause of a consumated deal.

"If a real estate agent or broker is otherwise entitled to a commission, the principal cannot defeat that right by closing the deal himself or through another broker." (Syl. ¶ 1, 2.)

In the opinion in the DeYoung case it was said:

"An owner who has knowledge that a broker with whom he has listed his property has interested a prospective customer with whom he is still conducting negotiations, cannot defeat the broker's right to a commission by the expedient of closing the deal himself or through another broker. (12 C. J. S. 215 to 217.)" (p. 725.)

In the Pattee case the general rules were restated but it was there held that because the evidence failed to establish an express or "clearly implied" contract of agency, the broker could not recover a commission.

From the evidence introduced in support of the pleadings herein we can come to no other conclusion than that there was ample evidence to support the trial court's findings and the findings support its judgment. The result is that both questions raised by defendants must be answered in the affirmative and the trial court did not err in any of the particulars complained of.

Judgment affirmed.

FATZER, J., dissenting: I cannot agree to the court's affirmance of the judgment. In my opinion the evidence is wholly insufficient to support the district court's finding "that there was a bona fide offer for a ready, able and willing purchaser to purchase the property upon price and terms agreeable to both the seller (defendants) and buyer (Mrs. Roberton)."

The uncontradicted evidence in this case shows that Mrs. Roberton, the purchaser, made her one and only offer to purchase this property on October 10, 1962, after the plaintiff's listing expired on October 7, 1962. The defendants accepted that offer and the preliminary contract was executed on October 11, in the office of another broker, and the sale of the property was consummated on October 17, 1962. It is clear from the plaintiff's letter to the defendants, written after his listing of the property had expired, that he had been unable to obtain a qualified buyer and could not get the defendants' property sold. In that letter the plaintiff listed the names of various persons to whom he had shown the property, but the name of Mrs. Roberton was not one of those persons. It is clear he was not entitled to a real estate commission.

SCHROEDER, J., dissenting: I fully concur in the dissenting opinion of Justice Fatzer but wish to make a few additional observations.

In my opinion the two questions raised on this appeal require negative answers. First, there is no evidence presented by the record to indicate that the property in question was sold during the three-months' period during which it was listed exclusively with the plaintiff, the trial court's finding to the contrary notwithstanding. Second, there is no evidence to support the trial court's finding that there was a bona fide offer from a ready, able and willing purchaser to purchase the property upon a price and terms agreeable to both the seller and buyer during the three-months' period.

The substance of the evidence boils down to the fact that while the plaintiff's listing was in force, Velma Roberton would not make an offer of a sufficient amount acceptable to the defendants; the defendants would not accept an amount she was willing to pay and still pay a commission. The parties could not get together, and the defendants directed Velma Roberton to the agent who had an exclusive listing, but she refused to deal with an agent and did nothing.

In deciding to wait for a possible lower price after the plaintiff's

listing expired, Mrs. Roberton took the risk that in the meantime some other person would purchase the property from the defendants through the broker. Actually, the Hopewells were trying to purchase the property upon terms agreeable to the defendants, but could not raise the money, and this deal was pending until the expiration of the three months during which the plaintiff had the exclusive listing of this property. The defendants took the risk that in the meantime Mrs. Roberton would purchase some other piece of property. If the parties chose to follow this course of action, they had a right to do so. The plaintiff was protected in that if anyone made an acceptable offer within the period of his exclusive listing, he was entitled to a commission. This was the purpose of a time limit on the listing. If the realtor could not effect a sale within the specified time, or in accordance with the terms of the contract, the owners were free to deal as they pleased after the listing had expired.

It must be observed this is an action upon a special contract. The ordinary rule applicable to a real estate agent's commission set forth in the court's opinion does not apply where the agent's commission is governed by a special contract. The agent can recover only if he brings himself within the terms of the specific contract under which, and only under which, the defendants were to be obligated. (*Morgan v. Wheeler*, 153 Kan. 695, 701, 113 P. 2d 165; and *Karr v. Moffett*, 105 Kan. 692, 185 Pac. 890.)

The defendants gave the plaintiff only a three-months' listing. Time was of the essence of this contract, the defendants having refused the plaintiff's request for a longer listing. Under such conditions, the defendants were not liable to pay the plaintiff any commission where he could not get the property sold during the time of the listing. (*Fultz v. Wimer*, 34 Kan. 576, 9 Pac. 316.)

There was no delay in making the sale caused by any negligence, fault or fraud of the defendants. The plaintiff admits that all during the time the contract was in force the defendants wanted to sell the property and would have sold it for the price of the contract, if the plaintiff could have found a buyer. The plaintiff's witness and prospective purchaser, Mr. Hopewell, likewise admitted that the defendants were going to sell him the property if he could have raised the money. The defendants referred Mrs. Roberton to the plaintiff, but she would not go to see him.

The defendants' contract of sale with Mrs. Roberton was not

only consummated after the plaintiff's time had expired pursuant to the terms of the specific listing, but was consummated on terms different from those specified in the specific listing, and the property was not sold to a person whose name was listed by the plaintiff as one with whom he had negotiations while the contract was in force. The plaintiff's contract for a commission was specific, and the service to be rendered in order to earn the commission was specific. The plaintiff did not succeed as he admits in his letter to the defendants. Hence, he is not entitled to a commission. (*Karr v. Moffett,* supra.)

It is respectfully submitted the judgment of the lower court should be reversed.