(754 P.2d 810)

No. 60,982

MOODY INVESTMENTS, INC., *Appellee,* v. MILES EDWARD BALDWIN and IRENE S. BALDWIN, *Appellants.*

Petition for review denied September 9, 1988.

Opinion filed May 13, 1988.

*Tim Connell,* of Connell & Connell, of El Dorado, for the appellants.

*Ronald J. Wilkinson,* of Wichita, for the appellee.

Before BRISCOE, P.J., BRAZIL and DAVIS, JJ.

BRISCOE, J.: In an action brought by Moody Investments, Inc.,

to recover a real estate commission, the trial court on cross-motions for summary judgment granted Moody summary judgment against Miles Edward Baldwin and Irene S. Baldwin. The Baldwins appeal.

The facts of this case are not in dispute. The El Dorado Motel in El Dorado, Kansas, originally owned by Nola Wierson, was sold on contract to Fred and Lauretta VanDenberg in 1963. The VanDenbergs in turn sold it on contract to the Baldwins in 1965. The sale which resulted in the present dispute occurred in 1973 when the Baldwins sold the motel to Ronald and Pauline Jacobson and Moody acted as the real estate agent.

On August 27, 1973, the Baldwins and the Jacobsons signed a form real estate purchase agreement which provided: "Seller to pay Broker fee as agreed." Moody also signed the contract. On October 31, 1973, the Baldwins entered into a formal real estate contract to sell the property to the Jacobsons. The contract provided for the Jacobsons to pay $2,970 a month to the escrow agent until the purchase price was paid in full. The contract also included the following provision:

"The first $1,505.00 of each monthly payment shall be applied on the Fred U. VanDenberg contract of June 27, 1963; the next $590.00 shall be applied to the Nola M. Wierson contract dated May 20, 1965; the next $198.26 shall be applied to Moody Realty Co., Inc.; and the balance of said payment in the sum of $676.74 shall be paid to the Sellers; and such sums will be so paid until the amounts due as previously set out have been paid in full. In addition, Moody Realty Co., Inc., total consideration for commission is $23,700.00 and the payment of $198.26 includes interest at eight per cent (8%)."

A closing statement was prepared which provided that $23,700 was owed to Moody, "Subject to Escrow Contract." A commission agreement had also been prepared on September 27, 1973, which provided:

"Baldwins and Moody agreement on commission on sale of El Dorado Motel is that $23,700.00 is to be amortized in formal contract at same term and interest rate and paid to Moody from monthly payment made to the escrow agent."

The agreement was signed by M.J. Moody and Miles Baldwin.

On June 15, 1978, the Patels purchased the motel from the Jacobsons, assuming the Jacobsons' contract with the Baldwins. Once the Patels signed the agreement to buy the motel and took over its operation, the payments to the Baldwins became spo-

radic, finally stopping altogether on February 28, 1986. The Baldwins were at this time the record owners, the Wierson and VanDenberg contracts having been paid. The Jacobsons apparently filed for bankruptcy during this period and the trustee abandoned their interest in the property.

The Baldwins then filed a foreclosure action against the Jacobsons and the Patels and within that action asserted the default provision of the contract between the Baldwins and the Patels. The Baldwins were granted foreclosure and awarded a money judgment for the balance owed under the real estate contract. Neither the petition filed by the Baldwins nor the judgment entered are included in the record. A sheriff's sale was held on August 1, 1986, at which the Baldwins bid in the amount of the judgment plus taxes and other expenses and received a certificate of purchase. The Patels subsequently paid the Baldwins the entire balance owed and the Baldwins surrendered the certificate of purchase to the Patels.

On December 8, 1986, Moody filed the present action against the Baldwins to recover the balance of the commission owed to Moody under the contract between Moody and the Baldwins. After receiving motions for summary judgment from both parties and hearing argument, the court entered summary judgment in favor of Moody. Following the court's ruling from the bench, counsel for the Baldwins raised the issue of an alleged written agreement between Moody and the Baldwins which the Baldwins' counsel discovered after the Baldwins' answer was filed. The court held that, since the agreement was not mentioned in the pleadings, the order of summary judgment disposed of all issues in the pleadings. The Baldwins subsequently filed a motion for leave of court to amend their answer, which was denied.

## ENTRY OF SUMMARY JUDGMENT

(a) Is the broker entitled to commission when the contract is closed, but the buyer later defaults by failing to make installment payments?

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Richardson v. Northwest Central Pipeline Co.*, 241 Kan. 752, 756, 740 P.2d 1083 (1987).

The Baldwins argue under the facts of this case the trial court erred in granting summary judgment to the broker Moody. The Baldwins argue any time there is a default by the buyer in the terms of a contract, which results in the sale of the real estate not being consummated, any further obligation to pay the broker's commission is terminated. They contend that, due to the failure to make installment payments, default, and foreclosure, the contract was not completed. This argument was not made to the trial court.

As a general rule, issues asserted for the first time on appeal are improper for appellate review. However, if a newly asserted issue involves only a legal question arising on proved or admitted facts which will be finally determinative of the case, or if consideration is necessary to serve the ends of justice or to preventing a denial of fundamental rights, an appellate court may consider the issue even though not considered by the trial court. *State v. Baker*, 11 Kan. App. 2d 4, 9, 711 P.2d 759 (1985), *rev. denied* 238 Kan. 878 (1986). The issue presented by the Baldwins concerns a question of law which would be finally determinative of the case. If the rule suggested by the Baldwins applies, Moody would not be entitled to the commission as a matter of law. The facts from which the issue arises are agreed to by the parties. Therefore, although not raised below, the issue will be considered.

In support of their argument that subsequent default on the installment payments bars recovery of the commission, the Baldwins cite *Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 236 A.2d 843 (1967). In *Johnson*, the court held that a broker's right to a commission comes about only when the buyer performs in accordance with the contract. The buyer and seller executed a contract in which the buyer agreed to make three payments before the closing date. The buyer failed to make the final payment and, on the closing date, admitted he was financially

unable to perform. The court stated that "the true test of a willing buyer is not met when he signs an agreement to purchase; it is demonstrated at the time of closing of title, and if he unjustifiably refuses or is unable financially to perform *then*, the broker has not produced a willing buyer." *Johnson*, 50 N.J. at 548-49.

The Baldwins fail to point out that the *Johnson* rule was adopted by the Kansas Supreme Court in *Winkelman v. Allen*, 214 Kan. 22, 519 P.2d 1377 (1974):

"The general rule is that a real estate agent or broker is entitled to a commission if (a) he produces a buyer who is able, ready and willing to purchase upon the proffered terms or upon terms acceptable to the principal; (b) he is the efficient and procuring cause of a consummated deal. The latter is subject to a qualification where failure in completion of the contract, or closing title, results from the wrongful act or interference of the principal." Syl. ¶ 1.

"The term 'able' in the general rule that entitles a real estate agent or broker to a commission, if he produces a buyer who is able, ready and willing to purchase upon the proffered terms or upon terms acceptable to the principal, in the context of the rule means more than mere mental competence to make a contract or physical ability to sign it. The term 'able' refers to the financial ability of the broker-produced purchaser to complete the transaction." Syl. ¶ 4.

The issue raised by the Baldwins turns on whether the deal was "consummated" within the meaning of the rule adopted in *Allen*. The Baldwins argue failure to make all of the installment payments prevented the deal from being consummated, due to the financial inability of the purchasers to perform. *Allen* did not involve default of a purchaser subsequent to the signing of a real estate contract. In *Johnson*, 50 N.J. 528, the closing of title clearly marked the completion of the transaction. Arguably, title did not pass here because of failure to make the installment payments.

This case, however, is distinguishable from *Johnson*. Here, the warranty deed was placed in escrow to be delivered upon completion of the installment payments. At least one jurisdiction has held that failure of the purchaser to make installment payments does not amount to failure to consummate the transaction. In *Setser v. Commonwealth, Inc.*, 256 Or. 11, 470 P.2d 142 (1970), the Oregon Supreme Court recognized the rule that, in the absence of default by the seller, the broker's right to a commission comes into existence only when the buyer performs in accordance with the contract of sale. However, the court held the adoption of that rule does not mean the buyer must completely

perform all of the terms of an installment contract of sale before the broker is entitled to the commission. Instead, the sale is deemed consummated subject to defeasance only by subsequent failure to perform. According to the court in *Setser*, where the buyer fails to make the down payment or perform other acts necessary to the closing of the sale, the transaction is not consummated and the broker is not entitled to the commission.

The reasoning of *Setser* appears sound. Here, the contract of sale was executed, the down payment was paid, and monthly installment payments were paid for several years. Although title had not passed to the purchasers, it can be said the deal was "consummated." To hold otherwise would make the right to the commission very tenuous. Brokers would not be entitled to their commissions until all installment payments were made, which, as in this case, could be a period of years.

(b) Is the broker entitled to commission when commission is payable out of monthly installment payments, purchaser defaults, seller forecloses, and property is redeemed for full amount due on contract?

The Baldwins argue the court erred in granting summary judgment because the sales contract provided the commission was to be paid only out of the monies paid into the escrow account. Once the installment payments stopped, the fund became depleted and the obligation to pay the commission ceased. Moody argues the court was correct in granting summary judgment because, by making the commission payable out of the installment payments, the parties intended that the commission be paid by the purchaser and not the seller. Therefore, since the Baldwins received the full amount due on the contract, they should pay the commission which was originally included as part of the contract price.

The trial court did not make findings of fact or law in granting summary judgment. However, it is clear from the transcript of the hearing on the motions for summary judgment that the court adopted the rule that, if the seller ultimately receives all of his money following foreclosure, the commission is owed. In adopting this rule, the court referred to the analysis used in two cases cited in Moody's motion for summary judgment: *Craig v. Mar-*

*grave*, 84 Nev. 638, 446 P.2d 653 (1968); *Fletcher Realty, Inc. v. Hayslope Properties*, 712 S.W.2d 478 (Tenn. App. 1986).

In both *Margrave* and *Hayslope*, the court found receipt of installment payments by the purchaser was a condition precedent to payment of the commission under the sales agreement. The issue in *Hayslope* was whether this condition was satisfied when a buyer defaults and the seller forecloses and bids in the property at the sale. In *Margrave*, the issue was whether failure to bid in the property at the sale excused the condition precedent. In both cases, the courts recognized two different rules applied in these cases. Under the first, where a broker is to receive a commission out of the purchase money as it is paid to seller, in the event of default by buyer and foreclosure where the seller bids in the property, the broker is entitled to the commission. The rationale is that, since the broker would be entitled to his commission if a third party purchased at the sale, the result should be no different if the seller himself bids in. The other rule is that the broker is not entitled to the commission. The rationale is that sellers have bargained to receive payments in money for their property and have required that the broker's commission come from the purchase price and not the seller's pockets. If an independent third party buys at the foreclosure sale, then the sellers receive purchase money from which to pay the commission. If the sellers bid in the property, they get the property back, not the money out of which the commission was to be paid. See *Margrave*, 84 Nev. 638; *Hayslope*, 712 S.W.2d at 481.

In this case, the trial court concluded that, under either rule, the commission was owed because the seller received the money upon redemption by the Patels. From this, it may be concluded the court found (1) the payment of the commission was made conditional by the sales agreement; (2) the condition was that the installment payments were paid by the purchaser; (3) this condition was satisfied by a third party's redemption of the property and payment of the remainder due on the contract to the seller; and, therefore, (4) the commission is due. Although the court did not make these specific findings, its reliance on the cases discussed indicates this was the rationale of the court in granting summary judgment against the Baldwins.

The Baldwins' argument on appeal is that the court errone-

ously interpreted the agreement. According to the Baldwins, the sales agreement expressly made the commission payable out of the escrow funds. Once the fund became depleted due to purchaser's failure to make installment payments, the obligation to pay the commission ceased. The Baldwins argue the agreement here is the same as that in *Donaldson v. LeNore*, 112 Ariz. 199, 540 P.2d 671 (1975), as it provides for payments from the escrow account to the broker. While the agreements are similar, *LeNore* can be distinguished. Unlike the seller in the present case, the seller in *LeNore* did not achieve the sale of his land, either through foreclosure or otherwise. Therefore, *LeNore* affords us no guidance concerning the rights of the parties upon foreclosure and redemption.

The trial court was correct in granting Moody summary judgment. The sales agreement here did not restrict the commission to the escrow fund. Instead, it provided that a portion of each monthly payment should be paid to the broker. This is similar to the *Margrave* and *Hayslope* cases relied on by the court, and the rule of those cases should apply. The Baldwins have received the full amount owed under the contract. Therefore, the commission will not come out of their pockets but from the money paid by the Patels upon redemption. This is consistent with the intent of the parties as expressed in the words of the sales agreement. If the parties intended to restrict the commission to the escrow fund, they could have done so by stating so in the agreement.

## DENIAL OF MOTION TO AMEND ANSWER
## FOLLOWING ENTRY OF SUMMARY JUDGMENT

At the hearing on the motions for summary judgment, following the court's ruling from the bench in favor of Moody, the Baldwins' counsel raised the issue of an alleged written agreement between the Baldwins and Moody. According to the alleged agreement, if the Jacobsons defaulted, the Baldwins could request Moody to operate and sell the motel to pay off the remaining indebtedness under the Baldwin-Jacobson sales contract. If Moody refused, the Baldwins could terminate Moody's interest in the original escrow contract. According to counsel, the agreement was not discovered until after the answer was filed,

when Moody's' deposition was taken. The trial court held the pleadings did not refer to this agreement and the motion for summary judgment disposed of all pleadings to date. According to the court, the Baldwins' claim amounted to a counterclaim or setoff and counsel should seek leave to amend the answer to allege this claim.

The Baldwins filed a motion for leave to amend their answer on May 22, fifteen days after the hearing. In the proposed amended answer, the Baldwins alleged that demand was made on Moody under the agreement to step in and operate the motel after default, but Moody refused. The Baldwins claimed Moody's refusal resulted in a forfeiture of the commission. The court denied the motion to amend.

K.S.A. 60-215 governs amendments to pleadings, and provides, in pertinent part:

"(a) *Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

The trial court has wide latitude and discretion in permitting or refusing amendments of pleadings and, absent a clear abuse of discretion, the trial court's order will not be disturbed on appeal. *Kinell v. N.W. Dible Co.*, 240 Kan. 439, 444, 731 P.2d 245 (1987). In *Kinell*, the Supreme Court upheld the denial of a motion to amend following summary judgment where two motions to amend had been granted prior to entry of summary judgment.

In view of the discretion given the trial court, denial of the motion to amend was not an abuse of discretion. Counsel knew of the newly discovered agreement before the hearing and could have moved for an amendment at that time. Given the failure of counsel to raise the issue or move for amendment before entry of summary judgment, the trial court did not abuse its discretion.

Affirmed.