(66 P.3d 921)
No. 89,343

RICHARD J. WRIGHT and RICHARD WRIGHT REALTORS, *Appellants*, v. RAYMOND R. SHEPHERD and JUNE M. SHEPHERD, *Appellees.*

Opinion filed April 18, 2003.

*Vernon L. Jarboe, Martha A. Peterson,* and *Stephen Lanterman,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., of Topeka, for appellants.

*Greer S. Lang* and *Darryl Graves,* of Lawrence, for appellees.

Before RULON, C.J., LEWIS and GREEN, JJ.

GREEN, J.: This is an action by Richard J. Wright and Richard Wright Realtors (collectively referred to as Wright and Wright) for an alleged breach of an exclusive listing agreement by Raymond R. Shepherd and June M. Shepherd. The trial court granted the Shepherds' motion for summary judgment after finding that Wright and Wright were not entitled to a commission on the sale of property under an option contract where the property was purchased after the expiration of the exclusive listing agreement. We affirm.

On April 1, 1997, Wright and Wright entered into an exclusive listing agreement for the sale of the Shepherds' commercial property located in Lawrence, Kansas. Under the terms of the listing agreement, which was effective until June 1, 1997, the Shepherds agreed to pay Wright and Wright a 6% commission if a "sale or exchange is made or a purchaser is found who is ready, willing and

able to purchase the property before the expiration of this listing . . . ." The agreement listed the sale price for the property at $275,000 and a monthly lease price at $2,000. The parties later extended the listing agreement to November 1, 1997, and lowered the sale price to $250,000 and the monthly lease rate to $1,800.

In September of 1997, Wright and Wright introduced Larry and Peggy Werkheiser to the Shepherds as potential purchasers or lessees of the property. On October 16, 1997, the Werkheisers entered into a lease agreement with the Shepherds whereby the Werkheisers agreed to rent the property from October 15, 1997, until October 31, 2000, for a monthly rental of $1,800. Under the terms of the lease, the Shepherds granted the Werkheisers a nonexclusive right to purchase the property during the first 18 months of the lease. Wright and Wright assisted in the negotiation of the lease and reviewed the lease before its execution. In accordance with the terms of the listing agreement, the Shepherds paid Wright and Wright a 6% commission on the monthly rental fees paid by the Werkheisers between October 16, 1997, and January 5, 1999.

On December 29, 1998, approximately 13 months after the expiration of the listing agreement, the Werkheisers exercised the option to purchase the property and entered into a contract to purchase the property for $250,000. Wright and Wright did not assist in the sale of the property to the Werkheisers and did not prepare the purchase contract or participate at the closing. On January 5, 1999, the Werkheisers closed on the purchase contract.

Wright and Wright brought suit against the Shepherds on June 22, 2001, alleging that the Shepherds breached the terms of the listing agreement by failing to pay Wright and Wright a 6% commission on the sale of the property under the option contract. On cross-motions for summary judgment, the trial court held that under the clear and unambiguous language of the parties' listing agreement, Wright and Wright were required to procure a purchaser that was ready, willing, and able to purchase the property before the expiration of the listing agreement in order to be entitled to a commission. As such, the trial court implicitly found that the phrase "before expiration of the listing," as used in the parties' listing agreement, related to when the purchase must occur, not

when Wright and Wright were required to procure a purchaser. The trial court held that Wright and Wright were not entitled to a commission on the sale of the property because the undisputed facts showed that the Werkheisers were not ready, willing, and able to purchase the property until they exercised their option to purchase, which was long after the expiration of the listing agreement.

On appeal, Wright and Wright argue that the trial court erred in awarding summary judgment on their claim that they were entitled to a commission on the sale of the property. The standard of review for a motion for summary judgment is well established:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]' " *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

Here, the trial court awarded summary judgment after finding that Wright and Wright were not entitled to a commission under the terms of the parties' listing agreement. "The legal effect of a written instrument is a question of law for the court to decide. On appeal, a written instrument or contract may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court. [Citation omitted.]" *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 486, 15 P.3d 338 (2000). If the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. See *KPERS v. Russell*, 269 Kan. 228, 236, 5 P.3d 525 (2000).

Kansas law has long recognized that a real estate broker's entitlement to a commission is dependent on the express terms and conditions set forth in the listing agreement. See, *e.g., Harrin v. Brown Realty Co.*, 226 Kan. 453, 459, 602 P.2d 79 (1979). Here,

the listing agreement entered into between the parties expressly provided as follows:

"(1) Seller agrees to pay Listing Broker, as compensation for services rendered, a cash commission of 6% of the gross sale price said commission to be due and payable on the happening of any of the following events, to-wit:

"a. If a sale or exchange is made or a purchaser is found who is ready, willing and able to purchase the property before the expiration of this listing, by the Listing Broker named above or by Seller, or through any other person at the above price and terms, or for any other price and terms Seller agrees to accept; or

"b. Such compensation shall be paid if property is sold, conveyed or otherwise transferred within 90 days after the termination of this agreement or any extension thereof to anyone with whom the agent has negotiated prior to final termination . . . ."

Wright and Wright maintain that the language of the listing agreement does not require the closing to occur before the expiration of the agreement in order for them to receive a commission, only that a sale or exchange is made or a purchaser is found before the expiration of the listing agreement and the sellers and purchasers agree to terms. Wright and Wright insist that they are owed a commission because they found a purchaser for the property before the expiration of the listing agreement. They argue that the fact that the purchase was conditioned upon the exercise of the option does not affect the fact that a purchaser was found.

The Shepherds, on the other hand, argue that Wright and Wright's interpretation of the listing agreement is strained. The Shepherds point out that the listing agreement expressly defined the circumstances under which Wright and Wright were entitled to a commission. The Shepherds argue that subparagraph (a) of the listing agreement defined the events which triggered Wright and Wright's entitlement to a commission before the expiration of the listing agreement and subparagraph (b) defined the events which triggered entitlement to a commission after the expiration of the listing agreement. The Shepherds assert that under subparagraph (a), one of three events was required to occur during the term of the listing agreement for them to be obligated to pay a commission: (1) a sale, (2) an exchange, or (3) "a purchaser is found

who is ready, willing and able to purchase the property *before the expiration of this listing . . . .*" (Emphasis added.)

The Shepherds also claim that under subparagraph (b), Wright and Wright would have been entitled to a commission during the 90-day period following the expiration of the listing agreement if, during that 90-day period, the property was "sold, conveyed or otherwise transferred . . . to anyone with whom the agent has negotiated prior to final termination," provided that Wright and Wright gave the Shepherds written notice setting forth the names of prospective purchasers before or upon the termination of the listing agreement. The Shepherds argue that subparagraph (b) established the outside limit of the time period during which any sale, conveyance, or other transfer of the property was required to have occurred in order to obligate them to pay Wright and Wright a commission.

Although the Kansas courts have not addressed the precise issue presented in this case, several other jurisdictions have considered whether a broker is entitled to a commission where a prospective purchaser was granted an option to purchase property and the option was not exercised until after the expiration of the listing agreement. For example, *Century 21 v. Gibson*, 152 A.D.2d 446, 549 N.Y.S.2d 232 (1989), involved an action by a real estate broker seeking a commission arising out of the sale of property, whose owner, during the term of an exclusive listing agreement, entered into a lease containing an option to purchase, with the option being exercised after the expiration of the listing period. The *Century 21* court held that "[b]ecause the listing agreement was in effect when the option to purchase was given, and because the option subsequently was exercised, [the broker] is entitled to a commission just as if an actual sale had occurred during the life of the listing agreement." 152 A.D.2d at 447.

The Shepherds, however, argue that *Century 21* is distinguishable from the instant case because New York does not require listing agreements to be in writing, whereas in Kansas, a real estate broker's commission is dependent on the express terms of the listing agreement. As such, the Shepherds argue that this court should

enforce the parties' listing agreement according to its clear and unambiguous terms.

Another case which considered whether a broker was entitled to a commission on the sale of property under an option contract exercised after the expiration of the listing agreement is *Mulholland v. Ferber*, 359 N.W.2d 321 (Minn. App. 1984). There, the sellers entered into an exclusive listing agreement with a broker for the sale of four parcels of property, which provided, in pertinent part, as follows:

"This agreement and agency shall remain in effect until Dec. 15, 1980. If before the expiration of this agreement I receive a written offer consistent with the terms of this listing or on other terms accepted by me, I agree to pay you a commission of 6% of the sale price . . . .

"I further agree to pay you at the same rate of commission should I contract to sell or exchange the property within 15 days·after the expiration date of this agreement to any person to whom, during the period of this agreement, you shall have shown or offered this property, and whose name has been disclosed to me within 72 hours after the expiration of the agreement." 359 N.W.2d at 322.

Within the time frame of the listing agreement, the broker found purchasers for parcels A and B, and the sellers paid the broker a 6% commission on the sale of those parcels. The purchasers also entered into an 18-month option to purchase parcel C, and the broker was paid a commission on the purchase price of the option. Several months after the listing agreement expired, but within the terms of the 18-month option, the purchasers exercised the option to purchase parcel C. The broker claimed that because his efforts resulted in the sale of parcel C, he was entitled to a commission. Specifically, the broker claimed that the option granted by the sellers extended the expiration of the listing agreement and that because the purchasers subsequently exercised the option, he was entitled to a commission on the sale of parcel C.

In affirming the trial court's entry of judgment in favor of the sellers, the *Mulholland* court held that the option did not satisfy the conditions of the listing agreement and that the option did not extend the terms of the listing agreement to encompass the optionees' subsequent exercise of the option:

"The listing agreement makes no mention of options or the commissions to be paid thereon. The [broker] did not produce a buyer within the time frame of the

listing agreement who became obligated to purchase Parcel C. The optionee was ready, willing, and able to purchase the option only and [the broker] was paid a commission for the option to purchase. The payment of this commission was a full performance of the terms of the exclusive listing agreement." 359 N.W.2d at 323.

Similarly, in *Estate of Saemann v. Tucker Realty*, 529 N.E.2d 126 (Ind. App. 1988), the court held that a broker was not entitled to a commission upon a prospective purchaser's exercise of an option to purchase, where the option was exercised after the expiration of the listing agreement. The court rationalized that the broker was not entitled to a commission because the listing agreement made no mention of options to purchase or commissions to be paid thereon and failed to provide for any extensions of time for performance of the broker's obligations under the terms of the listing agreement. Specifically, the *Saemann* court stated:

"Had purchasers executed their option to purchase during the term of the listing agreement, [the broker] would undoubtedly have been entitled to a commission, as it ultimately would have secured a ready, willing and able purchaser during the term of the contract. However, the failure of [the broker] to provide for an extension of time of the listing agreement or utilize a separate clause in the contract specifically providing for options to purchase proves fatal to its case. Where the sale of realty or procurement of a ready, willing and able purchaser or execution of a valid executory contract occur pursuant to a listing agreement containing a time limitation, *they must be executed during that time period stipulated* for a broker to earn a commission. [Citation omitted.]" 529 N.E.2d at 129.

We are persuaded by the rationale set out in *Mulholland* and *Saemann*. To be entitled to a commission, it was incumbent upon Wright and Wright to procure a purchaser ready, willing, and able to purchase the premises upon the terms set forth in the listing agreement or upon the terms acceptable to the Shepherds and within the time provided in the listing agreement.

Wright and Wright, however, procured potential purchasers who were merely willing to lease the property on the condition that they be granted an 18-month option to purchase the property. Obviously, the option contract was outside the conditions of the listing agreement. See *Loose v. Brubacher*, 219 Kan. 727, 731, 549 P.2d 991 (1976) (stating that an option to purchase is not a contract until accepted by the optionee). As a result, Wright and Wright failed

to procure a ready, willing, and able purchaser within the time provided in the listing agreement.

Had Wright and Wright desired a commission in the event a potential lessee exercised an option to purchase the property, after the expiration of the listing agreement and the 90-day extension period, they could have easily included a provision in the listing agreement providing for such a possibility. The parties' listing agreement, however, made no mention of options to purchase or commissions to be paid thereon. Instead, in drafting the listing agreement, Wright and Wright provided that they would only be entitled to a commission in the event they produced a purchaser (not an optionee) who was ready, willing, and able to purchase the property (not accept an option to purchase the property) and that the purchase occur before the expiration of the listing agreement or within 90 days of the expiration of the agreement (not after expiration of the listing agreement or the 90-day extension period). As a result, we find that under the clear and unambiguous terms of the listing agreement, Wright and Wright were not entitled to a commission on the sale of the Shepherds' property because the Werkheisers exercised the option to purchase the property outside the time limitations of the listing agreement. As a result, the trial court properly granted summary judgment in favor of the Shepherds.

Affirmed.