(209 P.3d 741)
No. 99,991

PREMIER REALTY, LLC, d/b/a REMAX PREMIER and THOMAS C.
LASSLEY, *Appellants*, v. I.T.J. INVESTMENTS, INC., *Appellee*.

—

Opinion filed June 19, 2009.

*David L. Dahl,* of Johnson, Kennedy, Dahl & Willis, of Wichita, for appellants.

*James R. Gilhousen,* of Crockett & Gilhousen, of Wichita, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Premier Realty, LLC, d/b/a ReMax Premier (Premier), and Thomas C. Lassley (collectively referred to as Plaintiffs), real estate broker and a real estate agent, respectively, appeal from a summary judgment entered in favor of I.T.J. Investments, Inc. (ITJ), which denied them commissions under an exclusive right to sell agreement with ITJ. On appeal, the Plaintiffs contend that they alleged facts sufficient to permit a recovery of a commission under Kansas law because they had substantially performed their obligation under the listing agreement to sell a residence identified as 12518 W. Bitner Court. We disagree. The record fails to show that the residence was sold, leased, or exchanged within the conditions and the time limit in the listing agreement. In addition, the Plaintiffs assert that they were entitled to a commission on a second residence identified as 12534 W. Bitner Court because the evidence showed that ITJ hindered or prevented the Plaintiffs' ability to perform their part of the listing agreement, which excused the Plaintiffs' nonperformance of a condition precedent. The question whether the contract could have been performed was a disputed material question of fact, requiring us to remand for a trial on this issue. Accordingly, we affirm in part , reverse in part, and remand for trial.

ITJ is a developer of new homes; it is owned by Ray Jacoby and his wife. ITJ entered into a " 'Listing Agreement Exclusive Seller Agency' " with the Plaintiffs on the properties located at 12518 and 12534 W. Binter Court to run from July 18, 2005, to January 18, 2006. This agreement was an " 'Exclusive Right to Sell Agreement.' " The parties also entered into extensions of the 12518 and 12534 W. Binter Court listings to run through June 3, 2006.

Ronald Johnson is a retired accountant and friend of Jacoby. He has known Jacoby for more than 40 years and still does Jacoby's

accounting work. On one occasion, Johnson and his wife met Lassley when they came to look at 12518 W. Binter Court. Nevertheless, Plaintiffs never presented ITJ with an offer, written or otherwise, for the purchase of 12518 W. Binter Court. Plaintiffs also never notified ITJ that they considered Johnson as a prospective purchaser procured by them, required by paragraph 3 of the listing agreement. During the exclusive listing period, Jacoby instructed Lassley to pull 12518 W. Binter Court off the market because Johnson was going to live there. Moreover, Jacoby stated that he told Johnson that Johnson would " 'get that house,' " referring to 12518 W. Binter Court. One witness, Jesse Helms, stated by affidavit that Jacoby told him and Lassley that Jacoby was selling the house to Johnson, but then paused and said, " '[W]ell, I'm just kind of giving it away, I'm not making any money on it.' "

Johnson began to occupy 12518 W. Binter Court in May 2006. Jacoby allowed Johnson to occupy the home based on their friendship. No deed was executed in Johnson's favor, and Johnson has never purchased or leased 12518 W. Binter Court. Nevertheless, Jacoby stated that if Johnson died, his wife would be allowed to continue living in 12518 W. Binter Court. Johnson sold his previous residence, and Jacoby stated that Johnson could sell 12518 W. Binter Court and keep the money from the sale.

On May 20, 2006, Lassley met Scott and Erika Plummer, who signed the guest book at an open house for 12534 W. Binter Court. Lassley requested that the Plummers enter into an Exclusive Buyer Agent agreement, the language of which requires a buyer's agent to " 'promote the interest of the Buyer with the utmost good faith, loyalty, and fidelity.' " Lassley obtained signatures from the Plummers on a Transaction Broker Addendum, but not from Jacoby. Lassley also obtained the Plummers' signature on a purchase contract for 12534 W. Binter Court. Nevertheless, Jacoby objected to the sale price he had previously set, whereupon Lassley raised it by $2,900. The purchase agreement for 12534 W. Binter Court was contingent upon the sale of the Plummers' existing home, and Jacoby contended that he did not sign the purchase agreement for that reason.

Premier's managing broker, Todd Davis, stated by affidavit that he had a conversation with Jacoby in May 2006, during which time Jacoby said he would not sign the contract relative to the Plummers for 12534 W. Binter Court as long as he was being pressed for commission on 12518 W. Binter Court. Lassley echoed this allegation. Davis also stated that Jacoby looked only at the front page of the contract for 12534 W. Binter Court and he did not look at or mention the contingencies. Lassley likewise alleged that Jacoby did not mention contingencies until after this lawsuit was filed. When ITJ's listing with the Plaintiffs expired, it listed 12534 W. Binter Court with another broker, and the home was sold to the Plummers.

Plaintiffs sued ITJ for alleged commissions owed, in the amount of $29,874, for the sale or transfer of the subject properties under the exclusive listing agreement. ITJ moved for summary judgment, and the trial court granted ITJ's motion and dismissed all of Plaintiffs' claims.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. *Korytkowski v. City of Ottawa,* 283 Kan. 122, Syl. ¶ 1, 152 P.3d 53 (2007).

A factual issue is not genuine unless it has legal controlling force as to a controlling issue, while a disputed fact immaterial to the issue does not preclude summary judgment. *Muhl v. Bohi,* 37 Kan. App. 2d 225, 229, 152 P.3d 93 (2007). When there is no factual dispute, appellate review of an order for summary judgment is de novo. *Cooke v. Gillespie,* 285 Kan. 748, 754, 176 P.3d 144 (2008). When reasonable minds could differ as to conclusions drawn from

the material facts, summary judgment must be denied. *Koryt-kowski*, 283 Kan. at 128.

### Did the Trial Court Properly Grant Summary Judgment Against Plaintiffs as to 12518 W. Binter Court?

*Applicability of* Wright v. Shepherd

Plaintiffs first argue that the trial court's reliance on *Wright v. Shepherd*, 31 Kan. App. 2d 484, 66 P.3d 921 (2003), is misplaced because it deals with an option contract. Nevertheless, Plaintiffs' argument is without merit. In *Wright*, the trial court determined that the broker was not entitled to a commission under an option contract when the option was exercised after the listing agreement expired. Although this situation differs from the present case, the trial court merely used *Wright* to set forth the general rules of contract construction, which are applicable to the present.

The trial court in the present case cited *Wright* for the proposition that the exclusive listing agreement must be interpreted and applied by its " 'express terms and conditions.' " See 31 Kan. App. 2d at 486-87 (citing *Harrin v. Brown Realty Co.*, 226 Kan. 453, 459, 602 P.2d 79 [1979]). As *Wright* explains, this is the well-established law in Kansas regarding determination of commissions for real estate brokers, and nothing in the *Wright* decision implies that this law applies only to option contracts. *Wright's* applicability is further supported by the near identical wording of the *Wright* broker's exclusive listing agreement and Plaintiffs' listing agreement in the present case.

The interpretation and legal effect of written instruments are matters of law, and appellate courts exercise unlimited review. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005). If a contract's terms are clear, the parties' intent is determined from the language of the contract without applying rules of construction. *Anderson v. Dillard's Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007).

### Did Plaintiffs Produce a Ready, Willing, and Able Buyer?

The parties to a broker's listing agreement are free to make the compensation of the broker dependent on any lawful conditions.

The important question is what does the listing agreement provide? Paragraph 2 of the listing agreement states that before the Plaintiffs are entitled to a commission, one of two alternative events must occur:

"[T]he Broker [must produce] a ready, willing and able buyer for the property at the price and subject to the terms stated, or later agreed upon, or if the sale, lease or exchange of the property is made by the Seller or any other persons, during the term of the exclusive right to sell listing agreement."

Generally, construction of a listing agreement is construed against the broker because it is the broker who has authored the agreement. *Dearborn Motors Credit Corporation v. Neel,* 184 Kan. 437, 449, 337 P.2d 992 (1959) (A contract is construed strictly against the writer and liberally toward the other party.).

The Plaintiffs first argue that Johnson was a ready, willing, and able buyer. ITJ responds that the Plaintiffs did not provide evidence of Johnson's ability to buy sufficient to establish a dispute as to a material fact.

The trial court reasoned that Johnson was not a ready, willing, and able buyer because he never purchased the home. Nevertheless, this reasoning is incorrect. As correctly stated by the Plaintiffs and ITJ, the phrase "ready, willing, and able" does not require that a transaction be completed. " 'The term "able" merely refers to the financial ability of the broker-produced purchaser to complete the transaction.' " *Moody Investments, Inc. v. Baldwin,* 12 Kan. App. 2d 686, 690, 754 P.2d 810, *rev. denied* 243 Kan. 779 (1988) (quoting *Winkelman v. Allen,* 214 Kan. 22, Syl. ¶ 4, 519 P.2d 1377 [1974]). In *Moody,* this court ruled that a broker was entitled to a commission when the buyer executed an installment contract, made a down payment, and made monthly payments for several years before defaulting due to a financial inability to perform. 12 Kan. App. 2d at 689-91.

In *Marcotte Realty & Auction, Inc. v. Schumacher,* 229 Kan. 252, 260, 624 P.2d 420 (1981), this court was faced indirectly with the question of ready, willing, and able buyers. It expanded upon the definition of " 'able,' " stating that it requires more than mere mental competence and that a prospective purchaser is " 'ready,

willing and able' " although the purchaser does not have the cash in hand if the purchaser can obtain the necessary funds within the time fixed for performance. 229 Kan. at 259-60 (quoting *Winkelman*, 214 Kan. 22, Syl. ¶¶ 4, 5). A person is a financially able buyer when one of the following alternatives is present:

" '(1) If he has the needed cash in hand, or (2) if he is personally possessed of assets—which in part may consist of the property to be purchased—and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, or (3) if he has definitely arranged to raise the necessary money—or as much thereof as he is unable to supply personally—by obtaining a binding commitment for a loan to him for that purpose by a financially able third party.' " 229 Kan. at 260 (quoting *Winkelman*, 214 Kan. 22, Syl. ¶ 7).

ITJ asserts that the Plaintiffs did not furnish any evidence of Johnson's ability to purchase as required and defined by *Marcotte* sufficient to establish a dispute as to a material fact.

The Plaintiffs, however, argue that Johnson was a ready, willing, and able buyer because Jacoby, who had known Johnson for a long time, testified by deposition that he was a ready, willing, and able buyer. Although there are no specific dollar values attached to Johnson's supposed ability to purchase the subject property, Jacoby's admission certainly creates a genuine issue of material fact concerning whether Johnson was a ready, willing, and able buyer. Therefore, the trial court erred in finding that Johnson was not a ready, willing, and able buyer merely because he never purchased the home.

The Plaintiffs next argue that a genuine issue of material fact also exists as to whether they "produced" Johnson. ITJ responds that Johnson was produced by Jacoby, who had a long-standing friendship with him, not by any effort on the Plaintiffs' part.

The Plaintiffs point out that Lassley did show the house to Johnson; the Plaintiffs cite *Holloway v. Forshee*, 208 Kan. 258, Syl. ¶ 2, 491 P.2d 556 (1971), for the proposition that an agent does not have to bring the buyer and seller together personally or even introduce them to earn his commission; see *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 936, 159 P.3d 215 (2007). The Plaintiffs also argue that whether a broker produced a purchaser is ordinarily a question of fact to be determined by a totality of the

circumstances under *Holloway*, 208 Kan. at 260-61, and *DeYoung v. Reiling*, 165 Kan. 721, 725, 199 P.2d 492 (1948) (where there is substantial evidence to support the essential elements of broker's cause of action or if there is a conflict of evidence, the question of whether a broker has performed services entitling the broker to a commission is ordinarily for jury).

In *Holloway*, our Supreme Court affirmed a judgment awarding a broker commission for a home sale under an open listing agreement. Moreover, the court ruled that whether a broker was the procuring cause of a purchase is ordinarily a question of fact to be determined in the light of the totality of circumstances. 208 Kan. at 260-62 (citing *Martin v. Weidman*, 199 Kan. 716, 433 P.2d 459 [1967]; *Hiniger v. Judy*, 194 Kan. 155, 398 P.2d 305 [1965]; *Patee v. Moody*, 166 Kan. 198, 199 P.2d 798 [1948]; *DeYoung*, 165 Kan. 721; *Grimes v. Emery*, 92 Kan. 911, 141 Pac. 1002 [1914]). In *Holloway*, the totality of the circumstances revealed that the broker's employee was the first to introduce the purchaser to the residential area and to show him the residence, to establish price, to discuss mortgage money and interest rates, and to identify the owner and his residence. The purchaser contacted the owner within 2 days of seeing the property, and he purchased the house and moved in within 6 days. These circumstances showed that the real estate broker was the efficient and procuring cause of sale, even though he never brought the seller and the buyer together face to face. 208 Kan. at 260-62.

In *DeYoung*, a case similar to *Holloway*, our Supreme Court reversed the sustaining of a demurrer to the broker's evidence. Moreover, the court stated that the evidence should be put to the finder of fact for determination of whether the broker was the procuring cause of a ready, willing, and able buyer. *DeYoung*, 165 Kan. at 728. The totality of circumstances examined in *DeYoung* revealed that the owner listed the land with the broker, who took the purchaser to the owner and showed him the land. The broker also told the owner about the purchaser's farm in another county, and the broker offered to take the owner out to see it. Ultimately, the owner and the purchaser traded land with the aid of a second broker.

In the present case, the only evidence supporting the Plaintiffs' claim that they produced Johnson was that Lassley showed him the house. Unlike *Holloway* and *DeYoung*, there was no evidence that Plaintiffs were the first ones to introduce Johnson to the neighborhood or the first ones to show him the house. There was also no evidence that the Plaintiffs established the price for Johnson, discussed mortgage money and interest rates, or identified the seller. Nor was there evidence that Johnson contacted the Plaintiffs at any point after seeing the house. In addition, the present case is distinguishable because the totality of the circumstances reveals a preexisting relationship between Jacoby and Johnson, as correctly pointed out by the trial court in its decision.

If an agent efficiently produces a buyer who is ready, willing, and able to purchase the property and if the agent is the procuring cause of the deal, the agent is entitled to receive a commission. *Martin*, 199 Kan. at 718. The key undisputed fact is that Johnson and Jacoby had ongoing personal and business relationship for more than 45 years. No evidence was presented that Johnson learned about the residence in question only through the Plaintiffs' efforts. Moreover, no evidence was presented that the Plaintiffs were even the procuring cause in having Johnson move into the residence. To the contrary, the undisputed evidence showed that Jacoby had Johnson move into the property because of their longstanding relationship.

A party opposing a summary judgment motion has an affirmative duty to come forward with evidence establishing a dispute as to a material fact. *Knudsen v. Kansas Gas & Electric Co.*, 248 Kan. 469, 483, 807 P.2d 71 (1991). The Plaintiffs shoulder the burden of presenting evidence to establish a disputed material fact, and the lack of any substantial evidence demonstrating that they produced Johnson is fatal to their claim. See *Korytkowski*, 283 Kan. at 128. As stated earlier, there is no showing that Johnson had become interested in the residence or had determined to buy it through Plaintiffs' efforts. Consequently, the Plaintiffs' argument fails.

*Did ITJ Sell, Lease, or Exchange 12518 W. Binter Court Before Expiration of the Listing Agreement?*

The second way that the Plaintiffs could have earned a 6% commission would have been to show that ITJ sold, leased, or exchanged the property during the term of the listing agreement. The trial court found that there had been no exchange, sale, or lease of the home to Johnson, that title to the home had remained in ITJ, and that the home had seemed to be a gift to Johnson not contemplated under the express terms of the listing agreement. The Plaintiffs argue that an exchange, sale, or lease took place, and ITJ responds that the property was merely gifted to Johnson.

The Plaintiffs' argument under this theory of recovery consists of mere speculation. They suggest that whether ITJ gifted the property to Johnson is a question of fact that should have been reserved for the jury. Moreover, they contend that it is possible the property was either sold, leased, or exchanged. Nevertheless, there was no direct evidence of a sale, lease, or exchange of the property. There was no evidence that rent or other consideration was ever or will ever be paid for the property. Moreover, there was no evidence that the title to the property was ever transferred from ITJ to Johnson. Indeed, there was undisputed evidence that the title to the property remained in ITJ. Generally, whether there was a sale, lease, or exchange of the property would typically be a question of fact best left to the province of the factfinder. In the present case, however, there was no material factual dispute on which reasonable minds could differ.

Even if the property were gifted, as the trial court seems to indicate, there was no express agreement to pay a commission if the property was gifted during the listing period. "Kansas law has long recognized that a real estate broker's entitlement to a commission is dependent on the express terms and conditions set forth in the listing agreement." *Wright*, 31 Kan. App.2d at 486. Here, ITJ did not bind itself to pay a commission if the property was gifted.

The Plaintiffs also argue that regardless of whether Johnson's inhabitation of the property was a sale, lease, exchange, or gift, ITJ

transferred the property in some form to Johnson before expiration of the listing agreement, entitling the Plaintiffs to commission under paragraph 3 of the listing agreement. Nevertheless, paragraph 3 of the listing agreement clearly states:

"Such compensation shall be paid if property is sold, leased, exchanged, conveyed, or otherwise transferred within 90 days after the termination of this agreement or any extension thereof to anyone with whom the agent has negotiated or to whom the agent has exposed the property prior to final termination, *provided Seller has received* notice in writing, including the names of prospective purchasers, before or upon termination of this agreement or any extension thereof." (Emphasis added.)

Paragraph 3 conditions the earning of a commission based on the following language: "[P]rovided Seller has received notice in writing, including the names of prospective purchasers, before or upon termination of this agreement or any extension thereof." The word "provided" is a commonly accepted conjunction, which creates a condition precedent in a contract. *Wallerius v. Hare*, 194 Kan. 408, 411, 399 P.2d 543 (1965).

The Plaintiffs did not present any evidence that they had complied with this condition precedent by furnishing ITJ with a written notice as required by paragraph 3. Because there was no tender of performance by Plaintiffs in accordance with the express terms of the listing agreement, the Plaintiffs cannot recover under paragraph 3. Therefore, Plaintiffs have not met their burden to present evidence establishing a disputed material fact concerning this theory of recovery sufficient to preclude summary judgment. See *Korytkowski*, 283 Kan. at 128.

As stated earlier, there was no express language contained in the listing agreement to pay a commission if the property were gifted to someone during the listing period. Moreover, there was no express agreement to pay a commission if the property were withdrawn from sale; see *Never v. King*, 276 Cal. App. 2d 461, 476, 81 Cal. Rptr. 161 (1969) ("The cases which tend to support plaintiff's position are distinguishable from this case because in each case there was an express agreement to pay the stipulated commission if the property were withdrawn from sale."). Finally, there was no express agreement to pay a commission if ITJ allowed someone to

occupy the property during the listing period. Indeed, there was no promise to pay a commission based on any of these contingencies.

In summary, the trial court may have erred in determining that Johnson was not a ready, willing, and able buyer. Yet, when a trial court reaches the right result, its decision is upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *In re Marriage of Bradley*, 282 Kan. 1, 8, 137 P.3d 1030 (2006). In the present case, although a genuine issue of material fact existed as to whether Johnson was a ready, willing, and able buyer, the trial court properly granted summary judgment against the Plaintiffs as to 12518 W. Binter Court because there was no evidence that Lassley "produced" Johnson or that ITJ either sold, leased, or exchanged the home before expiration of the listing agreement. This conclusion is vividly illustrated by an argument made by the Plaintiffs in their brief.

For example, the linchpin of the Plaintiffs' contention for recovery is as follows:

"The Seller agreed to pay the buyer 6% of the selling price, which is agreed to be $242,900.00, if the broker produced a buyer for the property according to the terms stated, or later agreed upon. *Whether there were terms agreed upon later by the Defendant and Mr. Johnson regarding the house is uncertain, but something has been agreed to because Mr. Johnson occupies the house with all rights of ownership.*"

The italicized contention is a *non sequitur*. The fact that Johnson was occupying the home did not prove that Johnson and ITJ had agreed to terms for Johnson to either purchase, lease, or exchange the home. This fallacious contention falls short of presenting evidence to show that the Plaintiffs "produced" Johnson as a ready, willing, and able buyer or that ITJ either sold, leased, or exchanged the home before the expiration of the listing agreement. As a result, because the Plaintiffs have failed to show a genuine issue of material fact as to any of these conditions, their argument fails.

*Did the Trial Court Properly Grant Summary Judgment Against Plaintiffs as to 12534 W. Binter Court?*

The trial court determined that the Plaintiffs' exclusive listing agreement prevented them from making a claim for commission on 12534 W. Binter Court because ITJ later listed it with another licensed real estate broker who ultimately closed the sale with the Plummers. ITJ adopts the trial court's rationale, while the Plaintiffs argue that ITJ's refusal to sign the purchase agreement was tantamount to a bad faith breach of contract. Moreover, the Plaintiffs argue that they were entitled to commission because they were the efficient and procuring cause of a consummated deal.

Kansas courts have upheld claims for commissions when the seller refused to sell under the listing agreement in bad faith, tantamount to a breach of contract. In *Hanson v. Schletzbaum*, 192 Kan. 265, 268-69, 387 P.2d 176 (1963), our Supreme Court affirmed an award of commission to the broker when the property was sold and a bona fide offer from a ready, willing, and able purchaser on terms agreeable to the vendors and purchaser existed while the broker had exclusive right to sell the vendors' realty. In *Hanson*, the court stated that a seller cannot defeat a broker's right to commission by closing the deal himself or through another broker. 192 Kan. at 269.

As previously stated, the Plaintiffs would be entitled to a commission if they produced a ready, willing, and able buyer at the price and terms stated or later agreed upon. There is some evidence that ITJ may have acted in bad faith when it refused to sign the purchase agreement simply because Jacoby did not want to pay the Plaintiffs' commission on 12518 W. Binter Court. See *Hanson*, 192 Kan. at 269; *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 760, 27 P.3d 1 (2001) (Kansas courts imply a duty of good faith and fair dealing in every contract.); *Meier's Trucking Co. v. United Constr. Co.*, 237 Kan. 692, 700, 704 P.2d 2 (1985) (Holmes, J., dissenting) (citing Restatement [Second] of Contracts § 205, comment d [1979] [stating a failure to cooperate in the other party's performance constitutes bad faith]). Also, despite Jacoby's contention that he refused to sign the Plaintiffs' purchase agree-

ment because it contained contingencies, there was evidence that he did not know about the contingencies when he refused to sign the agreement because he looked at only the first page.

Furthermore, there was evidence that Jacoby did not state the existence of contingencies in the purchase agreement as a reason not to sign it until after litigation had commenced. As the Plaintiffs suggest, a party cannot change its position after litigation has commenced and defend a refusal to consummate a sale of property on a different ground than originally asserted. See *Wilson v. Colburn*, 167 Kan. 381, 384, 206 P.2d 1054 (1949). Moreover, the Plummers' agreement with the later real estate broker contained such contingencies. Yet, ITJ agreed to enter into a contract with the Plummers.

We are guided in this inquiry by this court's decision in *Barbara Oil Co. v. Patrick Petroleum Co.*, 1 Kan. App. 2d 437, 566 P.2d 389, *rev. denied* 222 Kan. 749 (1977). In *Barbara,* the court considered "the appellant's contention that it was entitled to forego performance under the contract as a matter of law" because of a failure of a condition precedent. 1 Kan. App. 2d at 439. Leading to its holding on that issue, the *Barbara* court stated:

"We simply hold that although parties can place conditions precedent on their contracts, they cannot escape liability under the contracts merely by claiming the conditions have not been met. The balking party must affirmatively show that (1) the condition precedent actually failed and (2) because of such failure, the contract will not be performed. Whether or not a contracting party's refusal to perform was because of a genuine and good faith claim that a condition precedent failed is a question for the jury." 1 Kan. App. 2d at 440.

Here, whether Jacoby did not sign the Plummers' agreement because it contained contingencies or because Jacoby did not want the Plaintiffs to receive a commission under their agreement was a question of fact.

On the other hand, the trial court reasoned, as does ITJ in its brief, that the listing agreement allowed ITJ to sell 12534 W. Binter Court to the Plummers after expiration of the listing agreement without owing the Plaintiffs a commission. Paragraph 3 of the listing agreement states that the Plaintiffs were entitled to commission if the property was sold, leased, exchanged, conveyed, or trans-

ferred within 90 days after the termination of the agreement to anyone with whom the agent negotiated or to whom the agent exposed the property before final termination. Nevertheless, paragraph 3 also clearly states:

"Seller shall not be obligated to pay such compensation if a valid exclusive listing agreement is entered into during the term of said protection period with another licensed real estate Broker and the sale, lease, exchange, conveyance, or transfer of the property is made during the term of said protection period."

ITJ entered into an exclusive listing with Prudential Dinning-Beard Realtors on June 4, 2006, the day after its extended exclusive listing agreement with the Plaintiffs had expired. The property was later sold by ITJ to the Plummers through a Dinning-Beard employee acting as ITJ's agent on August 25, 2006. The uncontroverted evidence also shows that ITJ paid Dinning-Beard a commission, that Dinning-Beard was a licensed broker, and that its employee, Dana Engel, was a licensed salesperson. Therefore, under normal circumstances, the trial court would be correct in finding that the explicit language of the Plaintiffs' listing agreement with ITJ clearly prevented them from claiming a commission on the sale of 12534 W. Binter Court.

Nevertheless, this ignores the Plaintiffs' assertion that "[a] party to a contract cannot derive any benefit or escape any liability from his own failure to cause or failure to seek the happening of a condition precedent." In support of this contention, the Plaintiffs correctly cite *Wallerius*, 194 Kan. 408, Syl. ¶ 4, for this legal principle. This legal principle is well recognized by Kansas courts. See *Davis v. Key Gas Corp.*, 34 Kan. App. 2d 728, 737, 124 P.3d 96 (2005), *rev. denied* 281 Kan. 1377 (2006) ("Where the other party to a contract prevents or hinders fulfillment of a condition, that party cannot be heard to complain of its nonperformance since it is due to its own fault. See Restatement (First) of Contracts § 295 (1932); *Baker Farms v. LDS Corp.*, 136 Idaho 922, 42 P.3d 715 [Ct. App. 2002].");  *Talbott v. Nibert,* 167 Kan. 138, 146, 206 P.2d 131 (1949) ("A party to a contract cannot prevent performance by another and derive any benefit, or escape any liability, from his own failure to perform a necessary condition."); *Briney v. Toews,* 150 Kan. 489,

Syl., 95 P.2d 355 (1939) (holding that defendant could not interfere, hinder, or prevent performance by plaintiff and thereafter disclaim liability for commissions on ground of nonperformance). When Jacoby refused to sign the Plummers' contract, which the Plaintiffs procured, because it contained contingencies, it may have hindered or prevented performance by the Plaintiffs. Whether Jacoby was justified in rejecting the Plummers' contract because it contained contingencies, although evidence existed that Jacoby later accepted a contract from the Plummers that contained the same or similar contingencies, was a disputed question of material fact.

## *DID PLAINTIFFS BREACH A FIDUCIARY DUTY TO ITJ OR VIOLATE THE BROKERAGE RELATIONSHIPS IN REAL ESTATE TRANSACTIONS ACT, K.S.A. 58-30,101 ET SEQ.?*

The trial court determined that the Plaintiffs were also not entitled to a commission on the sale of 12534 W. Binter Court because they breached their fiduciary duty to ITJ and violated provisions of the Brokerage Relationships in Real Estate Transactions Act (Act), K.S.A. 58-30,101 *et seq.*, by entering into an exclusive buyer agent agreement with the Plummers. The Plaintiffs contend that ITJ gave them authority to function as a transaction broker in the original listing agreement and that final approval by ITJ of the transaction broker relationship was never necessary because it never signed the purchase agreement.

Under Kansas law, the Plaintiffs as agents for ITJ had a fiduciary duty " 'to act with the utmost good faith and loyalty for furtherance and advancement of the interests of his principal.' " *George v. Bolen-Williams, Realtors*, 2 Kan. App. 2d 385, 387-88, 580 P.2d 1357 (1978) (citing *Merchant v. Foreman*, 182 Kan. 550, 555-56, 322 P.2d 740 [1958]). This obligation espoused in *George* is mirrored by the Act. K.S.A. 58-30,106(a) states that "[a] seller's agent . . . shall be a statutory agent with the duty and obligation to: . . . (2) promote the interests of the client with the utmost good faith, loyalty, and fidelity." These concepts are essentially adopted by paragraph 1 of the Plaintiffs' listing agreement.

The Act also states that licensees shall not act as dual agents. K.S.A. 58-30,103(a). Nevertheless, there is an exception made for what the Act refers to as a "transaction broker." See K.S.A. 58-30,103(a). If there is a possibility that an agent may convert to a transaction broker, this must be disclosed in the original agency agreement. K.S.A. 58-30,103(g). Under K.S.A. 58-30,109(a), a brokerage firm may act as a transaction broker if it obtains the signed informed consent of the buyer before writing the purchase offer and the signed informed consent of the seller before signing the purchase contract.

In the present case, the listing agreement signed by ITJ warned it that the Plaintiffs may ultimately function as a transaction broker. The Plaintiffs obtained a signed buyer agreement from the Plummers, but they also concurrently obtained a transaction broker addendum signed by the Plummers along with the purchase offer. The Plaintiffs never obtained ITJ's signature on the transaction broker addendum, but such signature is only necessary before a seller signs the purchase contract, which ITJ refused to do. As a result, the Plaintiffs did not breach their fiduciary duty to ITJ or violate the Act. They merely attempted to become a transaction broker for the sale of 12534 W. Binter Court, and their efforts failed because ITJ refused to sign the transaction broker addendum and the purchase contract.

As a result, the trial court erred in granting ITJ's motion for summary judgment as to 12534 W. Binter Court.

Affirmed in part, reversed in part, and remanded for trial.

McANANY, J., concurring in part and dissenting in part: I concur with the majority that no commission was earned with respect to 12518 W. Bitner Court. However, I must dissent from the majority's decision to remand plaintiffs' claim for trial with respect to 12534 W. Bitner Court.

In July 2005, Premier Realty, LLC, d/b/a Remax Premier, and Thomas C. Lassley (plaintiffs), became I.T.J. Investments, Inc.'s (ITJ), exclusive agent for marketing 12534 W. Bitner Court. They agreed in the listing agreement to "promote the interests of the

Seller with the utmost good faith, loyalty and fidelity." When they entered into a similar, and conflicting, exclusive agency agreement with the Plummers, they still owed the utmost good faith, loyalty, and fidelity to ITJ. Plaintiffs were ITJ's exclusive agent until they were no longer ITJ's exclusive agent. Plaintiffs brought to ITJ an offer from the Plummers while plaintiffs were still ITJ's exclusive agent. When ITJ rejected it, plaintiffs immediately (and without consulting with the Plummers) increased the offer by $2,900. Obviously, plaintiffs had the authority to offer a higher purchase price than the Plummers initially offered to ITJ. In my opinion, plaintiffs breached their fiduciary duty to ITJ by attempting to consummate a sale of the property for a price they knew was not the highest price the Plummers were willing to pay for the property. I find no error by the district court in granting summary judgment to ITJ on this claim.